STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MOHIT GOURISARIA (CABN 320754)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7063
    FAX: (415) 436-7234
    Mohit.Gourisaria@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 20-442 SI |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | Judge: Hon. Susan Illston |
| ADRIAN KYLE BENJAMIN, | Date: October 1, 2021 |
| Defendant. | Time: 1:00 p.m. |

## I. INTRODUCTION

The COVID-19 pandemic has caused an exponential rise in the online exploitation of children, especially the enticement of children to produce sexually explicit content. And predators like Benjamin are to blame. Benjamin, a 25-year-old male, has a penchant for exploiting children — a penchant so unshakeable that an FBI raid, a federal criminal case, and release to a halfway house were insufficient to persuade him to mend his ways. As he admits in the plea agreement, Benjamin successfully enticed at least four children to engage in sexually explicit conduct and to share with him depictions of it. He also

U.S. SENTENCING MEMORANDUM     1
CR 20-442 SI

attempted to entice at least two others. Benjamin organized and saved the odious child pornography he received victim by victim under a master folder labeled in Japanese characters that translated to "Porn." But that's not all. Benjamin instructed at least one of his minor victims to *produce* child pornography in accordance with his precise instructions. In some of the videos, he can be seen masturbating as he instructs his minor victims. The egregiousness of Benjamin's offense and concern about recidivism counsel a lengthy custodial sentence.

## II. FACTS

### A. Benjamin Has Been Enticing Children Since At Least 2018.

As set forth in the PSR and paragraph 2 of the parties' plea agreement dated September 16, 2021 (the "plea agreement"),[1] Benjamin has a long pattern of grooming and sexually enticing female children.

#### 1. *Minor Victim 1*

Benjamin began communicating with Minor Victim 1 in 2018, when she was 14 years old. Her age was a fact that Benjamin knew and cherished.

| | |
|---|---|
| [Benjamin]: | I'm bot [sic] going to leave you because of your age dummy. How old are you? 16? 15? 32? |
| [Minor Victim 1]: | 14 … turning 15 on [REDACTED] |
| [Benjamin]: | Okay that's fine<br>You're still my little girl<br>Jeez<br>I still love you<br>Okay? |

Benjamin asked Minor Victim 1 to engage in sexually explicit conduct, and to share with him visual depictions of it. As a result of his exploitation of Minor Victim 1, Benjamin received at least seven images and three videos of her engaging in sexually explicit conduct, including massaging her breasts and digitally penetrating her vagina.

#### 2. *Minor Victim 2*

Benjamin began communicating with Minor Victim 2 when she was 13 years old, a fact that she communicated to him in September 2018.

[Benjamin]:        Can I ask your age?

---

[1] The plea agreement was sent to the Court via email on September 16, 2021.

U.S. SENTENCING MEMORANDUM         2
CR 20-442 SI

| | | |
|---|---|---|
| [Minor Victim 2]: | Young. <br> Hbu? | |
| [Benjamin]: | young? <br> lol | |
| [Minor Victim 2]: | haha | |
| [Benjamin]: | How young is young | |
| [Minor Victim 2]: | I was gonna ask the same thing | |
| [Benjamin]: | I'm 22 | |
| [Minor Victim 2]: | I'm under 18 <br> I'll say that much | |
| [Benjamin]: | lmao just tell me <br> you act like I've never spoken to a 15 year old | |
| [Minor Victim 2]: | I don't like telling people my age <br> I'm 13 but very mature for my age. | |
| [Benjamin]: | I see <br> why are you telling you're mature for your age <br> haha <br> you want me to hit on you or something | |
| [Minor Victim 2]: | What? <br> No | |
| [Benjamin]: | haha <br> also don't worry about your age <br> I wont judge you for it | |

Benjamin asked Minor Victim 2 to engage in sexually explicit conduct, and to share with him visual depictions of it. As a result of his exploitation of Minor Victim 2, Benjamin received at least three videos of her engaging in sexually explicit conduct, including penetrating her vagina using a hairbrush and digitally penetrating her vagina.

### 3. *Minor Victim 3*

Benjamin began communicating with Minor Victim 3 when she was 15 years old, a fact that she communicated to him and which he also would have known from following her on Instagram where she posted about homecoming and her geometry homework as a sophomore in high school.

| | | |
|---|---|---|
| [Benjamin]: | How old are you btw | |
| [Minor Victim 3]: | Uhhhhhh <br> Guess :3 | |
| [Benjamin]: | [blank] <br> Haha | |
| [Minor Victim 3]: | How old are you ? <br> No I'm not 13 >:((( | |
| [Benjamin]: | I'm 22 turning 23 in October | |
| [Minor Victim 3]: | Am I that childish | |
| [Benjamin]: | Hahahaha I was kidding <br> Oh nice | |
| [Minor Victim 3]: | Yeah I'm uhh 15 :))) <br> Mhmm | |
| [Benjamin]: | fbi gonna be knocking at my door any second | |

U.S. SENTENCING MEMORANDUM          3
CR 20-442 SI

But ok

Benjamin not only had Minor Victim 3 engage in sexually explicit conduct but also instructed her on at least two separate occasions to produce child pornography in accordance with his instructions. As a result of his exploitation of Minor Victim 3, Benjamin received at least 50 images and four videos of her engaging in sexually explicit conduct, including digitally penetrating her vagina and spreading her butt cheeks to expose her anus.

4. ***Minor Victim 4***

Benjamin began communicating with Minor Victim 4 when she was 16 years old; he joked that she was "old" once she turned 17.

| | |
|---|---|
| [Benjamin]: | What class is it |
| [Minor Victim 4]: | Biology |
| [Benjamin]: | What grade are you in again? |
| [Minor Victim 4]: | 11 |
| [Benjamin]: | O<br>Oh shitI forgot. You old |
| [Minor Victim 4]: | Lol you're older |
| [Benjamin]: | Haha i meant like<br>I forgot you're 17 already haha |
| [Minor Victim 4]: | Yeaaaa lol |
| [Benjamin]: | You plan on going to college? |
| [Minor Victim 4]: | Sorta. |

Benjamin asked Minor Victim 4 to engage in sexually explicit conduct, and to share with him visual depictions of it. As a result of his exploitation of Minor Victim 4, Benjamin received at least one image and five videos of her engaging in sexually explicit conduct, including massaging her breasts and rubbing and digitally penetrating her vagina beneath her underwear.

5. ***Additional Minor Victims***

The four children discussed above are confirmed minor victims that Benjamin successfully exploited into engaging in and/or producing child pornography. Benjamin's electronic devices also contained sexually explicit material from several other young girls whose ages could not be confirmed. Further, Benjamin attempted to entice at least two other confirmed minor victims to create and share child pornography with him. In other words — and Benjamin admits this in the plea agreement — he engaged in a clear pattern of activity involving the sexual abuse or exploitation of minors, including

conduct described in 18 U.S.C. § 2251(a) (producing child pornography) and 18 U.S.C. § 2422(b) (persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity).

### B. Benjamin Continued Exploiting Children Even After the FBI Searched His Room and Seized His Devices.

After learning that Minor Victim 3 was a child, Benjamin joked with her that "fbi gonna be knocking at my door any second." But when the FBI did knock on his door a year later, Benjamin seemed surprised to learn that it was illegal to entice minors into producing child pornography. Still, had Benjamin come to regret sexually exploiting children — had he the capacity for remorse — he might have course corrected after March 2020; that is, after the FBI confronted him, seized his devices, and warned him about his unlawful and damaging conduct. What did Benjamin do instead? He acquired a new phone and computer with the help of his mother and her boyfriend, and he then continued to entice children. Here, as one example, is an excerpt from a series of Discord chats between Benjamin and a new minor a month after the FBI search.

| | | |
|---|---|---|
| [Benjamin]: | | When is your bday again |
| | | Jan? |
| | | You were like |
| | | I wish youbwere younger and lived near me |
| | | And it wouldnt be weird calling you daddy |
| [Minor]: | | I hate online schoooolllll |
| | | My English teacher is a dick so I just dont do his work |
| | | The only thing I can keep up with is math |
| | | And sometimes science |
| | | My school also shoved most classes together so I only have science math eng and history |
| | | And pe on tues and thurs |
| [Benjamin]: | | You're literally gonna be like a sex toy to me |
| [Minor]: | | Am I really bout to drive up to bay for a fuck |
| | | Ur a whole 7 hours away |
| [Benjamin]: | | Plus i can come down there too |
| [Benjamin]: | | You probably touch yourself more than me no cap |
| [Minor]: | | I never said that |
| [Benjamin]: | | You dont have to |
| [Minor]: | | I said I was a virgin |
| [Benjamin]: | | So key is to get get really wet before I thrust in |

Benjamin was arrested in this case on October 1, 2020. At the time of his arrest, the FBI seized his new phone, a forensic review of which uncovered recent images and videos of suspected child

U.S. SENTENCING MEMORANDUM    5
CR 20-442 SI

pornography and child erotica that Benjamin had received, including the following (dated between July 15 and August 14, 2020):

- One image of what appears to be a naked female exposing her breasts and upper pubic area while taking a selfie in a mirror.
- One image of what appears to be a female exposing her buttocks in front of a mirror.
- One video of what appears to be a female masturbating using at first a single white cylindrical object to insert into her vagina. Throughout the video, the female then adds a second black cylindrical object to insert into her vagina at the same time of the white object. The video is 4 minutes, 36 in duration.
- One video of what appears to be a female penetrating and rubbing her vagina with her fingers. The video is 1 minutes, 37 seconds in duration.
- One video of what appears to be a Snapchat recording of a female masturbating by using her fingers to penetrate, rub, and expose her vagina. The video is 24 seconds in duration.
- One video of what appears to be a female masturbating using her fingers to penetrate, rub, and expose her vagina. The video is 21 seconds in duration.

The phone also included 24 videos, dated between July 18 and September 22, 2020, of Benjamin masturbating and stroking his penis until climax. Many of these recordings included Snapchat banners which suggest that the videos were sent to others.

When questioned during his arrest, Benjamin told the FBI that he had not used social-media platforms such as Snapchat for many months. But that was a lie. According to his phone records, Benjamin had used his social-media accounts to communicate with minors (as indicated by their messages, photos, and saved screenshots) as recently as September 30, 2020, the day before his arrest.

### C. Benjamin, Undeterred, Violated His Pretrial Release Conditions And His Then-Existing Plea Agreement With the Government.

Detention was a hard-fought battle in this case because Benjamin's history left the government convinced that so long as he had access to the Internet, he would continue to endanger children. That presented an unacceptable risk during a pandemic that has left children technology bound and

vulnerable. In October 2020, Benjamin was released to a halfway house without *any* access to electronic devices. Yet within months of his release, social-media accounts linked to Benjamin turned active again.

In May 2021, based on the FBI's investigation, Pretrial Services submitted a notice of violation alleging that Benjamin had violated his release conditions by continuing to access online platforms such as Discord, Rec Room, and YouTube, and that he had had potential contact with minors online. Using his halfway-house roommate's Verizon iPhone, Benjamin continued to participate in online chat rooms, including those frequented by minors. Because these were flagrant violations of his release conditions, the government moved to revoke Benjamin's release, and Benjamin was remanded to custody.

Benjamin's conduct at the halfway house also violated the plea agreement that the parties had entered into on December 17, 2020, wherein Benjamin made the following promise: "I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government." In exchange for the government not bringing additional charges for potential crimes committed from the halfway house, Benjamin entered into a revised plea agreement, which includes a joint recommendation that Benjamin's custodial sentence be followed by 10 years of supervised release.

### III.   DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The statute sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough

approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

### A. <u>Guidelines Range</u>

The PSR correctly calculates Benjamin's Criminal History Category as I.

Paragraph 7 of the parties' plea agreement (which the government drafted) calculates the total offense level as 31, applying a base offense level of 22 under USSG §2G2.2(a)(2). This yields a Guidelines range of 108-135 months. Probation, on the other hand, applies a base offense level of 32 pursuant to USSG §2G2.1(a), for a total offense level of 37 and Guidelines range of 210 months to 240 months.

The government agrees with Probation that there is proper legal basis for applying the higher offense level; it was an oversight on the government's part not to apply that higher level in its negotiations with defense counsel. That said, through the plea agreement, the parties have agreed that the total offense level is 31. Because the calculation set forth in the plea agreement was the basis of the bargain between the parties, the government recommends the sentence promised at the time it entered the plea agreement. *See generally United States v. Heredia*, 769 F.3d 1220, 1231 (9th Cir. 2014) ("[W]hen the prosecutor makes a promise to the defendant, that promise must be fulfilled") (internal citation and quotation marks omitted).

### B. <u>Benjamin's Conduct Was Despicable, Intentional, and Seriously Damaging to His Victims.</u>[2]

Though that would be despicable enough, this is not a run-of-the-mill child-pornography receipt case where Benjamin received images and videos of sexually exploited children that he did not personally know or entice. Here, Benjamin scoured the Internet for his victims; he found them, groomed them, enticed them. He made pubescent girls send him sexually explicit pictures of themselves, even had them produce videos in compliance with his instructions. He sometimes offered to meet his victims in person. Benjamin relished the fact that his victims were of a tender age — their sexual inexperience,

---

[2] The government understands that some of Benjamin's victims intend to submit letters to the Court and also to speak at sentencing. The government will promptly share any letters it receives with the Court and Probation.

U.S. SENTENCING MEMORANDUM          8
CR 20-442 SI

their desire to please an older man, their fear of crossing him. Indeed, their naivete was the key to his success, the reason he could successfully exploit so many children before he was discovered by the FBI.[3]

Sophisticated criminals like Benjamin operate from the safety of their homes and the cocoons of their privilege; they seldom look like the defendants who more routinely come before our courts, for brandishing a weapon or trafficking drugs. But appearances can be deceiving. In communicating with his minor victims, Benjamin employed mastery over grooming techniques used by seasoned predators of children, including asserting himself as an authority figure, using romantic or intimate language, engaging in sexually explicit conversations, indicating a desire to meet in person, and using guilt to deter children from disengaging from contact. Benjamin's enticement of children is particularly problematic because it continued into a pandemic that had the immediate and unfortunate effect of leaving children even more vulnerable to predators like Benjamin.[4]

To those of us who spend our personal lives mostly outside the Internet — IRL (in real life), as opposed to in the virtual worlds of social media and video games — online sexual exploitation may seem distinguishable from exploitation that occurs in person. But that is not the case. Benjamin's victims belong to a generation that inhabits the online world no less seriously than the offline one. Relationships, learning, play — everything has a place online. So does danger. Whether it lurks in their alleys or finds them in the recesses of platforms like Discord, it is equally real.

The documented consequences of childhood sexual abuse are myriad. They often persist for a lifetime, long after the immediate suffering from the sexual exploitation has passed. A meta-analysis of 37 studies across over 25,000 people showed, amongst other elevated risk factors, a 143% increase in risk of developing PTSD symptoms and a 150% increase in risk of becoming depressed or suicidal.[5]

---

[3] *See* Kloess, J. A., Beech, A. R., & Harkins, L. (2014). Online child sexual exploitation: Prevalence, process, and offender characteristics. *Trauma, Violence, & Abuse*, 15(2), 126-139 (attached as Exhibit A) (discussing the process of sexual grooming, including strategies commonly used by offenders to maintain power and control over their victim and to minimize the likelihood of reporting by a child to their family).

[4] *See, e.g.*, https://www.scientificamerican.com/article/the-coronavirus-pandemic-puts-children-at-risk-of-online-sexual-exploitation/ (last accessed September 13, 2021).

[5] *See* Paolucci, E. O., Genuis, M. L., & Violato, C. (2001). A meta-analysis of the published research on the effects of child sexual abuse. *The Journal of Psychology*, 135(1), 17-36 (attached as Exhibit B).

U.S. SENTENCING MEMORANDUM          9
CR 20-442 SI

Poor academic performance, chronic difficulties with trust and intimacy, and sexual promiscuity are some of the more benign costs of being sexually exploited as a child.

Finally, the government is far from convinced that Benjamin has learnt his lesson. Even with all the right conditions in place (an FBI search and looming criminal case, a court's order to remain at a halfway house without access to devices), Benjamin has proven that he is incapable, or perhaps simply uninterested, in mending his ways. Because Benjamin respects neither his minor victims nor our criminal justice system, his sentence must not only disable him from exploiting children in the future but also broadcast to the public that our courts won't tolerate sexual crimes against children.

### C. The Parties Agreed to Jointly Recommend 10 Years of Supervised Release.

Paragraph 7 of the parties' plea agreement provides as follows: "The parties have agreed to jointly recommend a 10-year term of supervised release, regardless of the term of imprisonment imposed." This condition was important to the government because of its concerns about recidivism. Benjamin not only continued to entice minors after the FBI searched his residence in March 2020 but also accessed online platforms such as Discord, Rec Room, and YouTube after he was ordered to reside at the halfway house without access to any electronic devices. The government therefore requests that the Court impose a 10-year term of supervised release.

### D. The Government Seeks a Restitution Order of No Less Than $12,000.

In accordance with the Mandatory Victim Restitution Act of 1996 and the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, paragraph 9 of the plea agreement requires that Benjamin "pay restitution in an amount to be set by the Court at the time of sentencing, but in no event less than $3,000 per identified victim portrayed in the child-pornography materials that [Benjamin] possessed." So far, four such victims have been identified — Minor Victim 1, Minor Victim 2, Minor Victim 3, and Minor Victim 4 — and Benjamin therefore owes at least $3,000 in restitution to each of those victims, for a total of no less than $12,000.

U.S. SENTENCING MEMORANDUM      10
CR 20-442 SI

## IV. CONCLUSION

With full consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Benjamin to 135 months of imprisonment and 10 years of supervised release (with the conditions recommended by U.S. Probation). The Court should also order that at least $12,000 in total restitution be paid, apportioned between the victims as indicated above.

DATED: September 17, 2021                           Respectfully submitted,

                                                    STEPHANIE M. HINDS
                                                    Acting United States Attorney


                                                     */s/ Mohit Gourisaria*
                                                    MOHIT GOURISARIA
                                                    Assistant United States Attorney