# Exhibit A

# Online "Predators" and Their Victims

## Myths, Realities, and Implications for Prevention and Treatment

Janis Wolak, David Finkelhor, and Kimberly J. Mitchell
Michele L. Ybarra

University of New Hampshire
Internet Solutions for Kids, Inc.

The publicity about online "predators" who prey on naive children using trickery and violence is largely inaccurate. Internet sex crimes involving adults and juveniles more often fit a model of statutory rape—adult offenders who meet, develop relationships with, and openly seduce underage teenagers—than a model of forcible sexual assault or pedophilic child molesting. This is a serious problem, but one that requires approaches different from those in current prevention messages emphasizing parental control and the dangers of divulging personal information. Developmentally appropriate prevention strategies that target youths directly and acknowledge normal adolescent interests in romance and sex are needed. These should provide younger adolescents with awareness and avoidance skills while educating older youths about the pitfalls of sexual relationships with adults and their criminal nature. Particular attention should be paid to higher risk youths, including those with histories of sexual abuse, sexual orientation concerns, and patterns of off- and online risk taking. Mental health practitioners need information about the dynamics of this problem and the characteristics of victims and offenders because they are likely to encounter related issues in a variety of contexts.

*Keywords:* Internet, adolescents, child sexual abuse, statutory rape, sexual offending

The Internet is becoming an increasingly dangerous place for children and teenagers whose online profiles often attract aggressive sexual predators, federal prosecutors said Friday. The U.S. Department of Justice has joined with nonprofit groups to promote [a] public service campaign . . . which warns that personal information posted online can lead to abductions and sexual exploitation of children. "Pedophiles are finding new ways and new opportunities to network with each other on how to exploit children," said [a] U.S. Attorney . . . at a news conference where federal agents warned that seemingly friendly Web sites like MySpace or Facebook often are used by sexual predators as victim directories. "Young girls who are innocently posting very personal information, or their identities, on these sites are setting themselves up for disaster," [he] said. (Filosa, 2007, ¶1–¶4)

Media stories about "online predators" who use the Internet to gain access to young victims have become a staple of news reports since the late 1990s, when youth Internet use became widespread. Much of the publicity about these cases depicts online molesters who use the Internet to lure children into sexual assaults (e.g., Blustein, 2007; Boss, 2007; Crimaldi, 2007; Kelly, 2005; Lowery, 2007). In the stereotypical media portrayal, these online child molesters lurk in Internet venues popular with children and adolescents (e.g., Apuzzo, 2006; Gintz, 2007). They use information publicly divulged in online profiles and social networking sites to identify potential targets (e.g., Medina, 2007; Rawe, 2006; Schrobsdorff, 2006). They contact victims, using deception to cover up their ages and sexual intentions (e.g., Crimaldi, 2007). Then they entice unknowing victims into meetings or stalk and abduct them (e.g., Filosa, 2007; Minaya, 2006; Rawe, 2006). Some news reports have suggested that law enforcement is facing an epidemic of these sex crimes perpetrated through a new medium by a new type of criminal (e.g., Bahney, 2006; Filosa, 2007; Manolatos, 2007). Needless to say, these reports have raised fears about Internet use by children and adolescents and about the safety of specific online activities such as interacting online with unknown people, posting profiles containing pictures and personal information, and maintaining Web pages at social networking sites.

The reality about Internet-initiated sex crimes—those in which sex offenders meet juvenile victims online—is

Janis Wolak, David Finkelhor, and Kimberly J. Mitchell, Crimes against Children Research Center and Family Research Laboratory, University of New Hampshire; Michele L. Ybarra, Internet Solutions for Kids, Inc., Santa Ana, California.

This article is largely based on three research projects conducted by the authors at the Crimes against Children Research Center, University of New Hampshire. The first Youth Internet Safety Survey was funded by the U.S. Congress through a grant to the National Center for Missing & Exploited Children. The National Juvenile Online Victimization Study and the second Youth Internet Safety Survey were funded by the National Center for Missing & Exploited Children and the U.S. Department of Justice, Office of Juvenile Justice and Delinquency Prevention. Program support for the preparation of this article was provided by the Verizon Foundation. Points of view or opinions in this document are those of the authors and do not necessarily represent the official position or policies of the U.S. Department of Justice or other entities that provided support.

Thanks to the members of the Family Violence Research Seminar of the Family Research Laboratory and the Crimes against Children Research Center at the University of New Hampshire for their valuable comments on an earlier version of this article.

Correspondence concerning this article should be addressed to Janis Wolak, Crimes against Children Research Center, University of New Hampshire, 10 West Edge Drive, Durham, NH 03824. E-mail: janis.wolak@unh.edu



**Janis Wolak**

different, more complex, and serious but less archetypically frightening than the publicity about these crimes suggests. Mental health practitioners need an accurate assessment of the nature and prevalence of online child molestation because they are likely to encounter related issues in a variety of contexts. Psychologists who work with youths may come across some who have been victimized or are in danger because of off- or online sexual risk taking. Psychologists who work in settings such as schools may have to respond to the concerns of parents, teachers, and other adults. In some cases, the publicity about Internet-initiated sex crimes may engender exaggerated fears that need to be dealt with by providing accurate information. In other cases, knowledgeable advice about how to handle situations in which youths are victimized, targeted, or at risk may be required. In addition, some psychologists may find themselves dealing with adults who are caught up in sexually compulsive online behavior that may include potential or actual illegal conduct with young people. Such offenders may come to treatment because they have been caught by law enforcement, but others may seek treatment voluntarily. For some, Internet-related problems may become apparent during individual, couple, or family therapy sessions.

The purpose of this article is to provide an accurate, research-based description of the characteristics and prevalence of this high-profile social problem; make recommendations for effective responses; indicate needs for future research; and give professionals basic resources to help manage issues that arise in practice and other contexts (see Table 1). We present an overview of research relating to Internet-initiated sex crimes, much of it conducted by us at the Crimes against Children Research Center (CCRC) at the University of New Hampshire. The CCRC research includes the first and second Youth Internet Safety Surveys (YISS-1 and YISS-2), which were telephone interviews with national samples of youth Internet users ages 10 to 17 conducted in 2000 and 2005 (Finkelhor, Mitchell, & Wolak, 2000; Wolak, Mitchell, & Finkelhor, 2006). It also includes the National Juvenile Online Victimization (N-JOV) Study, the only research to date that has examined the characteristics of Internet-initiated sex crimes by interviewing law enforcement investigators (Wolak, Mitchell, & Finkelhor, 2003a). The N-JOV Study sheds light on (a) the incidence and dynamics of Internet-initiated sex crimes in which online molesters were arrested by law enforcement and (b) the characteristics of victims and offenders. We surveyed a stratified random sample of 2,576 local, county, state, and federal law enforcement agencies between October 2001 and July 2002 to collect data about Internet-related sex crimes with juvenile victims (Wolak, Mitchell, & Finkelhor, 2003b). The goals were (a) to design a representative national sample of law enforcement agencies that would provide an overall picture of these crimes in the United States, (b) to understand how these cases emerged and were handled in a diverse group of agencies, and (c) to obtain detailed data about crime characteristics. Cases were eligible for the study if they were Internet-related, had victims younger than 18, and involved arrests made between July 1, 2000, and June 30, 2001. We used a two-phase methodology of mail surveys to agencies followed by telephone interviews. The mail surveys were sent to a stratified sample of agencies, with stratification based on specialization and training. Thus, the sample included high numbers of agencies that concentrated on these crimes or had specialized training, as well as a random selection of all other agencies. The response rate to the mail survey was 88%, with 385 agencies reporting a total of 1,723 cases. We conducted telephone interviews with investigators about specific cases selected randomly from the cases reported in the mail surveys. The final data set, weighted to account for sampling procedures, includes data from 612 completed interviews, 129 of which concern Internet-initiated offenses. (Data collection for a second N-JOV Study, replicating the first, began in June 2007.)

## How Do Internet Sex Offenders Operate?

The research about Internet-initiated sex crimes makes it clear that the stereotype of the Internet child molester who uses trickery and violence to assault children is largely inaccurate (Wolak, Finkelhor, & Mitchell, 2004). Most Internet-initiated sex crimes involve adult men who use the Internet to meet and seduce underage adolescents into sexual encounters. The offenders use Internet communications such as instant messages, e-mail, and chatrooms to meet and develop intimate relationships with victims. In the great majority of cases, victims are aware they are conversing online with adults. In the N-JOV Study, only 5% of offenders pretended to be teens when they met potential victims online (Wolak et

**Table 1**
*Resources for Mental Health Practitioners*

For reporting Internet-related crimes to law enforcement agencies:
- The CyberTipline: Operated by the National Center for Missing & Exploited Children, this is a federally funded online reporting center for crimes involving child pornography, child sexual molestation (not in the family), and online enticement of children for sexual acts. Reports are investigated and forwarded to appropriate law enforcement agencies. http://www.cybertipline.org/ or 1-800-843-5678.
- Internet Crimes Against Children (ICAC) Task Forces: Funded by the federal government and covering most U.S. jurisdictions, they provide resources for investigating Internet-related crimes involving child sexual exploitation. Many also conduct educational programs at schools and for the public. http://www.icactraining.org/

Education, training, and resources related to online victims:
- Some conferences usually provide education and training for mental health professionals on topics related to Internet-initiated sex crimes, such as treatment of adolescent victims, vulnerabilities of gay and lesbian youth, and youth pictured in child pornography. Among these are:
    San Diego International Conference on Child and Family Maltreatment, usually held in January
      http://chadwickcenter.com/conference.htm
    Dallas Crimes against Children Conference, usually held in August
      http://www.dcac.org/pages/cacc.aspx
- Mental health professionals who work with multi-disciplinary teams which include law enforcement may be eligible for training programs run by the:
    ICAC Training and Technical Assistance Program
      http://www.icactraining.org/
    American Prosecutors Research Institute's National Center for Prosecution of Child Abuse
      http://www.ndaa.org/apri/programs/ncpca/ncpca_home.html

Education, training, and resources related to online offenders:
- Association for the Treatment of Sexual Abusers (ATSA): For those who work with or may come into contact with offenders or potential offenders, ATSA conducts an informative annual conference scheduled each autumn. http://www.atsa.com/.
- The COPINE Project: This website, which originates in Ireland, focuses on child pornography offenders and contains a link to an anonymous self-help website for people who are concerned about their own behavior. It also contains a list of publications, some of which focus on assessment of offenders. http://www.copine.ie/
- Stop It Now: This group runs a confidential help line for people who suspect others, such as family members, of child sexual abuse or are concerned about their own behavior. http://www.stopitnow.com/

Educational materials for youth Internet users:
- SafeTeens.com: This site provides timely educational materials and commentary geared to teens.
- Center for Safe and Responsible Internet Use: Research-based educational materials for teenagers, parents, and schools can be downloaded from this site (http://www.csriu.org).

*Note.* This list is not meant to be comprehensive. Other good resources can be found through links in the resources listed and through Internet searches.

al., 2004). Also, offenders rarely deceive victims about their sexual interests. Sex is usually broached online, and most victims who meet offenders face to face go to such meetings expecting to engage in sexual activity. Many victims profess love or close feelings for offenders. In the N-JOV Study, 73% of victims who had face-to-face sexual encounters with offenders did so more than once. When deception does occur, it often involves promises of love and romance by offenders whose intentions are primarily sexual. Most offenders are charged with crimes, such as statutory rape, that involve nonforcible sexual activity with victims who are too young to consent to sexual intercourse with adults.

### Are Internet-Initiated Sex Crimes a New Form of Child Sexual Abuse?

Media reports and Internet safety messages about Internet predators often suggest that online meetings between adults and youths that develop into sex crimes constitute a new dimension of child sexual abuse (e.g., Bahney, 2006; Filosa, 2007; Manolatos, 2007). Although a new medium for communication is involved, the nonforcible sex crimes that predominate as offenses against youths online are not particularly new or uncommon. All states have criminal laws deeming youths below certain ages too young to consent to intercourse (Glosser, Gardiner, & Fishman,



**David Finkelhor**

2004; Manlove, Moore, Liechty, Ikramullah, & Cottingham, 2005). The crimes committed under these laws are referred to by a variety of names in different jurisdictions. For simplicity, we use the term *statutory rape*. Individual states vary considerably on ages of consent, with 16 being the most common, but ages of consent range from 14 to 18 (Norman-Eady, Reinhart, & Martino, 2003). Most states exempt peer relationships by requiring a minimum age for offenders or an age differential between the parties (Davis & Twombly, 2000). Also, many states provide more severe charges or penalties for crimes involving younger youths, intoxicated youths, and adults in positions of trust with youths, such as teachers (Glosser et al., 2004).

Violations of age-of-consent laws constitute a substantial proportion of sex crimes against minors in general. Analyses of crime report data suggest that 25% of the sex crimes committed against minors and reported to police involve statutory rape; there were an estimated 15,700 such reports across the United States in 2000 (Troup-Leasure & Snyder, 2005). This estimate is by no means a full measure of the number of such crimes. Many sex crimes against minors, perhaps the majority, are never reported to law enforcement (Finkelhor, Ormrod, Turner, & Hamby, 2005). Statutory rape is certainly more underreported than forcible rape because it often involves adolescents who may not view these incidents as crimes or themselves as victims (Berliner, 2002; Lanning, 2002). The number of youths involved is suggested by data gathered from young people via the Youth Risk Behavior Survey, which found in one state that about 1% of girls ages 11–12 and 3.5% of girls ages 13–15 reported incidents of nonforcible sex with boys or men who were five or more years older (Leitenberg & Saltzman, 2000). A national study conducted in 2002 found that 6% of girls had their first intercourse at age 14 or younger. Of those, 21% reported partners who were six or more years older (Abma, Martinez, Mosher, & Dawson, 2004). Although these percentages are small, they could represent large numbers of youths, and if comparable with numbers in other states, are similar in magnitude to the number of girls who experience forcible sexual assaults during a given year (Finkelhor et al., 2005; Hines & Finkelhor, 2007).

Statutory rape laws have engendered controversy because of concerns about whether consensual sexual activity between peers should be criminalized, whether underage adolescents voluntarily engaging in sex should be considered victims, and whether such laws are fairly enforced (Cheit & Braslow, 2005; Colb, 2004; Miller, Miller, Kenney, & Clark, 1998). In light of these controversies, it is important to keep in mind that crimes charged as statutory rape are diverse in their dynamics (Hines & Finkelhor, 2007; Troup-Leasure & Snyder, 2005). The participation of underage youths, while generally deemed voluntary, is voluntary in varying degrees. Some victims are pressured to engage in sex, and some are intimidated (Cheit & Braslow, 2005; Darroch, Landry, & Oslak, 1999). Compared with adults and even youths in their late teens (ages 17 to 19), younger adolescents have little experience with intimate relationships or romance (Weinstein & Rosenhaft, 1991). They often lack the ability to negotiate effectively with partners about sexual activity (Ponton & Judice, 2004). Young adolescents with older partners have high rates of coerced intercourse (Manlove et al., 2005).

In spite of controversies about statutory rape laws, the preponderance of public policy efforts in recent years has aimed to strengthen and enforce them (Donovan, 1997). In part, these efforts have been prompted by research linking high teen pregnancy rates to youths who have sex with older partners (Darroch et al., 1999; Donovan, 1997) and by high-profile news stories about teachers, priests, and other adults in positions of authority taking advantage of youths in their charge (Frawley-O'Dea & Goldner, 2007; Shakeshaft, 2004). Although state laws remain inconsistent in terms of age of consent and age discrepancies that are considered criminal, crime data suggest that law enforcement activity is concentrated on more serious cases. The crimes that result in arrest typically involve younger adolescents and adult offenders (Troup-Leasure & Snyder, 2005). Consistent with this broader picture, the Internet-initiated sex crimes pursued to arrest by law enforcement typically involve adult offenders who are 10 or more years older than their underage victims (Wolak et al., 2004).

## How Much Are Internet-Initiated Sex Crimes Contributing to Statutory Rape?

There were an estimated 6,594 arrests nationwide for statutory rape in 2000 (Troup-Leasure & Snyder, 2005). During about the same time period (July 1, 2000, to June 30, 2001) federal, state, and local law enforcement agencies



**Kimberly J. Mitchell**

made an estimated 500 arrests for Internet-initiated sex crimes, 95% of which were nonforcible (Wolak et al., 2003a, 2004). If these Internet-initiated sex crimes were counted among the 6,594 arrests for statutory rape, which they may have been, Internet-initiated sex crimes would have accounted for approximately 7% of all statutory rapes. This proportion of arrests may have grown since 2000 as Internet use has become more widespread and more law enforcement agencies have been trained to respond to Internet-related crimes. In the context of general sex crime risk, however, these numbers suggest that Internet-initiated sex crimes account for a salient but small proportion of statutory rape offenses and a relatively low number of the sexual offenses committed against minors overall.

## What Makes Youths Vulnerable to Online Child Molesters?

Many of the media stories and much of the Internet crime prevention information available suggest that it is naive and inexperienced young children who are vulnerable to online child molesters (e.g., Blustein, 2007; Boss, 2007; Crimaldi, 2007; Manolatos, 2007). However, 99% of victims of Internet-initiated sex crimes in the N-JOV Study were 13 to 17 years old ($M = 14.46$, $SD = 0.14$), and none were younger than 12 (Wolak et al., 2004). Forty-eight percent were 13 or 14 years old. This is a victim age profile that spans some important developmental shifts, but it is a considerably more restricted age profile than that for conventional offline child molestation, which includes a large proportion of victims younger than age 12 (Finkelhor & Baron, 1986; Snyder, 2000). Although adolescent immaturity may play an important role in the victimizations these youths experience, it is undoubtedly a different type of naïveté than that of preadolescent children. This distinction is important for developing effective prevention strategies.

First, the characterization of young people as vulnerable because of naïveté about the Internet itself is not accurate. By early adolescence (ages 12 to 13), youth Internet users generally understand the social complexities of the Internet at levels comparable to those of adults when answering questions about good and bad things that can happen online and the need to exercise care (Yan, 2006). Then, as youths get older and gain experience online, they engage in more complex and interactive Internet use (Livingstone, 2006). This actually puts them at greater risk than younger, less experienced youths, who use the Internet in simpler, less interactive ways. Among youths 12 to 17 years old, it was those 15 to 17 years of age who were most prone to take risks involving privacy and contact with unknown people (Livingstone, Bober, & Helsper, 2005).

Second, the characterization of young people as vulnerable because they are innocent about sex does not capture the nature of the sexual issues that get youths into trouble online. The reality of adolescent sexual development includes growing sexual curiosity, knowledge, and experience as youths make the transition from childhood to adulthood (Ponton & Judice, 2004; Steinberg & Morris, 2001). Even in early adolescence, most youths are quite aware of, interested in, and beginning to experiment with sex (DeLamater & Friedrich, 2002; Weinstein & Rosenhaft, 1991). By mid-adolescence, most have had romantic partners and are preoccupied with romantic concerns (Steinberg & Morris, 2001). Although most youths do not become sexually active in their early teen years, the median age for first intercourse is around 17 (Guttmacher Institute, 2006). Data gathered from teens in 2002 showed that 30% of girls and 32% of boys had intercourse before age 17, with variation by race and gender (Abma et al., 2004). Among girls, 25% of Hispanics, 30% of non-Hispanic Whites, and 41% of non-Hispanic Blacks had intercourse before age 17. Among boys, the numbers were 43% of Hispanics, 25% of non-Hispanic Whites, and 53% of non-Hispanic Blacks.

Healthy romantic relationships and sexual development are the issues of concern when considering youthful vulnerability to online molesters. This is so for several reasons. First, face-to-face peer relationships are the context in which most youths learn to handle the decisions, emotions, and negotiations of romance and intimacy (Connolly, Craig, Goldberg, & Pepler, 2004). The Internet-initiated sex crimes that are romances from the perspective of young victims typically take place in isolation and secrecy, outside of oversight by peers, family members, and others in the youths' face-to-face social networks. This isolation may lead to relationships that form more quickly, involve greater self-disclosure, and develop with greater intensity than face-to-face relationships among peers (McKenna, Green, & Gleason, 2002). Second, a considerable portion of victims are in early and mid-adolescence. Few youths of those ages have the mature judgment and emotional self-regulation required to engage in healthy relationships that include sexual intimacy (Cauffman &



**Michele L. Ybarra**

Steinberg, 2000; Weinstein & Rosenhaft, 1991; Wolfe, Jaffe, & Crooks, 2006). Third, youths in their early and mid-teens often struggle with emotional control (Mash & Wolfe, 2005). When they are drawn into online relationships that include disclosures about sexual matters, the feelings that are generated may be particularly powerful and difficult to handle for youths just beginning to experience sexual desires. Fourth, intense romantic and sexual involvements during early and mid-adolescence are associated with a range of negative outcomes (e.g., externalizing and risk behaviors; Halpern, Kaestle, & Hallfors, 2007; Neemann, Hubbard, & Masten, 1995; Ponton & Judice, 2004) and may result in neglect of other important developmental tasks, such as academic performance (Wolfe et al., 2006). Finally, early sexual activity is related to a variety of risk behaviors, both sexual (e.g., multiple partners, older partners, unprotected sex, early pregnancy) and otherwise (e.g., substance abuse, delinquency; Ponton & Judice, 2004; Raj, Silverman, & Amaro, 2000; Wolfe et al., 2006). These bode ill for youths in terms of mental health and academic achievement (Wolfe et al., 2006). In summary, what creates risk for teens online is not innocence about sex. The factors that make youths vulnerable to seduction by online molesters are complex and related to immaturity, inexperience, and the impulsiveness with which some youths respond to and explore normal sexual urges.

### *Certain types of online interactions with unknown people make youths vulnerable.*

The Internet is a dynamic, interactive environment that youths actively participate in creating (Greenfield & Yan, 2006), and it is this aspect of the Internet that creates risks for youths who behave in specific ways. Although many youths interact online with unknown people (i.e., people they do not know in person), most youths who do so are not at risk for sexual victimization (Wolak, Mitchell, & Finkelhor, in press). However, youths who send personal information (e.g., name, telephone number, pictures) to unknown people or talk online to such people about sex are more likely to receive aggressive sexual solicitations—those that involve actual or attempted offline contact (Mitchell, Finkelhor, & Wolak, 2007b). Aggressive solicitations do not necessarily involve sexual approaches from online molesters, and few youths who receive such solicitations agree to meet solicitors. Nonetheless, these findings from YISS-2 interviews with a nationally representative sample of youth Internet users are consistent with what we know about the dynamics of Internet-initiated sex crimes. Online child molesters often seduce youths by using online communications to establish trust and confidence, introducing talk of sex, and then arranging to meet youths in person for sexual encounters (Wolak et al., 2004). Because of this, it makes sense that youths whose online interactions include sending personal information to and talking about sex with unknown people are more likely to encounter individuals who make online sexual advances and then try to move them offline. Moreover, youths who send personal information and talk about sex are not typical youth Internet users. The majority of youths refrain from these behaviors (Wolak et al., 2006; Ybarra, Mitchell, Finkelhor, & Wolak, 2007). About three quarters of the youths surveyed had not sent personal information online to people they did not know in person; only 5% talked online to unknown people about sex.

Visiting chatrooms is another interactive behavior that is related to receiving aggressive sexual solicitations (Mitchell et al., 2007b). Chatrooms allow for immediate, direct communications between participants, and many of those geared to adolescents are known for explicit sexual talk, sexual innuendo, and obscene language (Subrahmanyam, Smahel, & Greenfield, 2006). This atmosphere may attract online child molesters. Also, the youths who visit chatrooms may be more at risk than other youths. There is some evidence that adolescents who visit chatrooms are more likely to have problems with their parents, to suffer from sadness, loneliness, or depression, to have histories of sexual abuse, and to engage in risky behavior than those who do not go to chatrooms (Beebe, Asche, Harrison, & Quinlan, 2004; Sun et al., 2005). Youths who are lonely, shy, or lacking in social skills may interact with others in chatrooms to compensate for problems they have forming friendships offline (Peter, Valkenburg, & Schouten, 2005). Younger adolescents, in particular, may not be developmentally prepared to avoid or respond to the explicit sexual invitations they are likely to encounter in many chatrooms (Greenfield, 2004). Most of the online child molesters described in the N-JOV Study met their victims in chatrooms. In a 2006 study, about one third of youths who received online sexual solicitations had received them in chatrooms (Ybarra & Mitchell, in press).

***Youths with histories of sexual or physical abuse, and other troubled youths, may be particularly vulnerable.*** Youth Internet users with histories of offline sexual or physical abuse appear to be considerably more likely to receive online aggressive sexual solicitations (Mitchell, Finkelhor, & Wolak, 2001; Mitchell et al., 2007b). Abused youths are more at risk for sexual victimization and exploitation in a variety of ways (Finkelhor, Ormrod, & Turner, 2007; Raj, Silverman, & Amaro, 2000). Abuse history could be related to emotional needs or developmental distortions that make some youths less able to assess and more responsive to inappropriate sexual advances (Berliner & Elliott, 2002; Rogosch, Cicchetti, & Aber, 1995). Some such youths may be vulnerable to online sexual advances because they are looking for attention and affection (Lanning, 2002). In addition, childhood trauma is associated with adolescent risk behavior, including risky sexual behavior (Wolfe et al., 2006). Further, the youths interviewed for the YISS-2 who engaged in high-risk interactive behavior had high rates of a variety of offline problems, including rule-breaking behavior, depression, and social interaction problems at the clinical or borderline level as measured by the Child Behavior Checklist (Wolak et al., in press). So, the youths most at risk may exhibit a wide range of problems. For some, prior abuse may trigger risky sexual behavior that directly invites online sexual advances. But delinquency, depression, and social interaction problems unrelated to abuse also may increase vulnerability.

***Posting personal information online does not, by itself, appear to be a particularly risky behavior.*** Posting personal information online is widely regarded as putting youths at risk for victimization by online child molesters, but findings from the YISS-2 suggest that it is not, by itself, associated with being sexually solicited online (Mitchell, Wolak, & Finkelhor, in press; Ybarra et al., 2007). Despite admonitions against it, the posting of personal information is prevalent among youth Internet users. More than half of youths ages 10 through 17 who were interviewed in 2005 about behavior in the previous year had posted personal information online in the form of names, school names, ages, pictures of themselves, or telephone numbers (Wolak et al., 2006). In general, behaviors manifested by large numbers of people fail to predict events that are relatively uncommon. Consequently, it is not surprising that a common activity such as posting personal information online does not predict a relatively rare event such as receiving an aggressive sexual solicitation.

In addition, a survey conducted in 2007 found that 55% of youth Internet users ages 12 to 17 had profiles posted online (Lenhart & Madden, 2007). Youths who created profiles or posted photos of themselves online were more likely to be contacted online by unknown people (of any age) but were not more likely to get contacts they described as scary or uncomfortable (Lenhart & Madden, 2007; Smith, 2007). So, although Internet safety advocates worry that posting personal information exposes youths to online molesters, we have not found empirical evidence that supports this concern. It is interactive behaviors, such as conversing online with unknown people about sex, that more clearly create risk.

Nonetheless, so far the data are quite general, and caution should be used in interpreting a slim literature. There may be risks associated with posting particular kinds of information or posting in particular venues that research has not discerned. For example, a 2006 content analysis of publicly viewable Web pages posted by adolescents at the social networking site MySpace found that 5% included pictures of youths wearing swimsuits or underwear (Hinduja & Patchin, in press). Youths who post such sexually suggestive photographs may be more likely to receive online sexual solicitations. On the other hand, some of these youths may have other traits that explain their actions, such as histories of sexual abuse, which are associated with sexual risk taking (Raj et al., 2000). In such cases, the Internet may be a mode of risk transmission rather than a creator of risk.

***Social networking sites such as MySpace do not appear to have increased the risk of victimization by online molesters.*** Starting in early 2006, there was considerable publicity about the potential dangers of social networking sites (e.g., Apuzzo, 2006; Bahney, 2006), which have become increasingly popular with adolescents. By the end of 2006, 55% of youth Internet users ages 12 to 17 used such sites, and 70% of girls ages 15 to 17 did so (Lenhart & Madden, 2007). Fears among parents, child advocates, and law enforcement officials seem to have arisen particularly in regard to the amount of personal information about young people available at such sites. Media stories have suggested that online molesters could use the information youths post about their identities and activities to locate and stalk these youths (e.g., Filosa, 2007; Roeper, 2006). Nonetheless, a close perusal of media stories suggests that online molesters have not changed their tactics as a result of the advent of social networking sites (e.g., Rawe, 2006; Schrobsdorff, 2006). In addition, between June and October 2007, we conducted over 400 interviews with police about Internet-related sex crimes in conjunction with a second N-JOV Study, and we have yet to find cases of sex offenders stalking and abducting minors on the basis of information posted on social networking sites. Online molesters do not appear to be stalking unsuspecting victims but rather continuing to seek youths who are susceptible to seduction.

Findings from the YISS-2 suggest that maintaining online blogs or journals, which are similar to social networking sites in that they often include considerable amounts of personal information and pictures, is not related to receiving aggressive sexual solicitations unless youths also interact online with unknown people (Mitchell et al., in press). In addition, youths with profiles on social networking sites, even those who were actively trying to meet new people, were no more likely than other youths online to have uncomfortable or scary contacts with unknown people (Lenhart & Madden, 2007; Smith, 2007). Further, an online survey of a representative sample of over 1,500 youth Internet users conducted in 2006 found that youths were

more likely to receive online sexual solicitations via instant messages or in chatrooms than through social networking sites (Ybarra & Mitchell, in press). Like admonitions against posting personal information, suggestions that social networking sites are more dangerous for youths than are other types of Internet activities are not substantiated by the small amount of relevant research available. Vulnerability appears to be distinguished more by interactive behavior than by online location or the posting of personal information, which is a relatively passive activity. However, although these conclusions suggest that fears about social networking sites have been overstated, caution should be used in interpreting this small amount of research about a new phenomenon.

**Patterns of risky online behavior make youths vulnerable.** Whereas posting information online, by itself, may not be as risky as some fear, there is increased risk associated with a pattern of different kinds of potentially risky online behaviors that includes posting personal information (Wolak et al., in press; Ybarra et al., 2007). The pattern was identified by looking at nine online behaviors that are often deemed, or could be, risky for youths to engage in (e.g., interacting online with unknown people, having unknown people on a buddy list, talking online to unknown people about sex, seeking pornography online, being rude or nasty online). As the number of different types of these behaviors increased, so did the odds of online interpersonal victimization (i.e., sexual solicitation or harassment; Ybarra et al., 2007). Youths who had engaged in three or four different types of these online behaviors were 5 and 11 times more likely to report online interpersonal victimization, respectively, than those who had not. Further, youths who interacted online with unknown people and also engaged in a high number of different risky online behaviors were much more likely to receive aggressive sexual solicitations than were youths who interacted online with unknown people but restrained their risky behaviors (Wolak et al., in press). This profile of Internet victims as youths who take risks online is consistent with research from offline environments showing risk-taking youths to be more vulnerable to victimization (Jensen & Brownfield, 1986; Lauritsen, Laub, & Sampson, 1992).

**Girls are more vulnerable, as are boys who are gay or questioning.** Girls are considerably more at risk than boys for victimization by Internet-initiated sex crimes, as well as for statutory rape in general (Cheit & Braslow, 2005; Troup-Leasure & Snyder, 2005; Wolak et al., 2004). Also, girls who become sexually active during early adolescence may be especially vulnerable because they are more likely to be involved with older partners (Leitenberg & Saltzman, 2000, 2003; Manlove et al., 2005) and to engage in risky sexual behavior (Ponton & Judice, 2004).

Although girls constitute a higher proportion of victims than boys, boys who identify as gay or who are questioning their sexual orientations may be another population particularly susceptible to online victimization. Boys constitute 25% of victims in Internet-initiated sex crimes, and virtually all of their offenders are male (Wolak et al., 2004). While being sexually victimized by male offenders does not confirm that male victims are gay, in the N-JOV Study, most of the Internet-initiated cases involving boys had elements that made it clear victims were gay or questioning their sexual orientations (e.g., meeting offenders in gay-oriented chatrooms). Hostility and social stigma toward homosexuality (Tharinger & Wells, 2000; Williams, Connolly, Pepler, & Craig, 2005) as well as feelings of isolation and loneliness (Martin & D'Augelli, 2003; Sullivan, 2002) may impair the ability of boys who identify as gay or questioning to form age-appropriate, intimate relationships. Concerns about confidentiality and feelings that problems are too personal to disclose can also limit these boys' willingness to get information about sexual matters from trusted adults (Dubow, Lovko, & Kausch, 1990). For these reasons, some gay boys turn to the Internet to find answers to questions about sexuality or meet potential romantic partners, and there they may encounter adults who exploit them.

## Online Child Molesters: Who Are They?

The widespread popularity of television shows such as *To Catch a Predator* (e.g., Hansen, 2006) reveals the public fascination with online child molesters. The media has been quick to characterize such men as Internet or online "predators" and pedophiles (e.g., Minaya, 2006; Roeper, 2006). Implicit in these characterizations is the notion that these are highly motivated and repetitive sex offenders who have deviant sexual interests in children and predilections to abduction and violent assault. In fact, the considerable research and theory about child molesters—on what impels them to offend, how likely they are to have large numbers of victims or to re-offend, and whether they have violent propensities (Finkelhor, 1984; Knight, Carter, & Prentky, 1989; Prentky, Janus, & Seto, 2003; Ward, Polaschek, & Beech, 2005)—makes it clear that child molesters are, in reality, a diverse group that cannot be accurately characterized with one-dimensional labels. Although there is little research specifically about *online* child molesters, there are indications that they occupy a narrow range on the spectrum of the sex offender population, one that largely excludes pedophiles and violent or sadistic offenders.

**Online child molesters are generally not pedophiles.** Because online child molesters primarily target adolescents, not young children (Lanning, 2002; Wolak et al., 2004), such offenders do not fit the clinical profile of pedophiles, who are, by definition, sexually attracted to prepubescent children (American Psychiatric Association, 2000). For several reasons, it would be difficult for pedophiles to use the Internet to target and recruit young children directly. Young children are not as accessible online as adolescents. They use the Internet less for communication, and they are more supervised in their online activities (Roberts, Foehr, & Rideout, 2005; Wang, Bianchi, & Raley, 2005). Also, they are less likely to respond to overtures from online child molesters because

they are, for developmental reasons, less interested in relationships, sex, and romance than are adolescents (DeLamater & Friedrich, 2002). Although cases of pedophiles using the Internet to meet prepubescent victims directly are quite rare, such offenders do use the Internet in other ways. For example, some pedophiles get access to young child victims through online contact with parents or other adult offenders, or they use the Internet to acquire child pornography.

Whereas most online child molesters do not appear to be motivated by pedophilia, some may have a sexual compulsion for or a primary sexual attraction to adolescent boys or girls. The term *ephebophile* is sometimes used to refer to men attracted to adolescent boys, and *hebephilia* to denote attraction to adolescents of either sex, although these terms are used inconsistently (Nuñez, 2003). Furthermore, although sexual activity between adults and young adolescents is illegal, hebephilia is not a paraphilia according to the *Diagnostic and Statistical Manual of Mental Disorders* (American Psychiatric Association, 2000); nor is it a deviant sexual attraction in the same sense as pedophilia, because adolescents are sexually mature. Rather, it is a violation of legal and social norms (Berliner, 2002). While there is little research about hebephilia, studies of adult men who seek adolescent girls in offline environments have found that such men are more likely to have criminal histories, less education, feelings of inadequacy, and arrested psychosocial development (Hines & Finkelhor, 2007). These offline offenders may be different from online child molesters, however. Nuñez (2003) suggested several possible motivations among adults who pursue sex with adolescents, which could apply to online molesters. They may seek admiration from victims who are sexually responsive but naive, want to relive adolescent experiences, be inhibited by fear of adult partners, or desire the power and control they can exert over youths. Some online child molesters may be primarily sexually attracted to adults but target adolescents for reasons that include impulse, curiosity, anger, or desire for power (Lanning, 2001). For some of these offenders, the danger and excitement of seducing underage youths are themselves a source of sexual arousal (Carnes, 2001).

***Online child molesters are rarely violent.*** Violence is rare in Internet-initiated sex crimes. The evidence from the N-JOV Study (Wolak et al., 2004) suggests that online molesters are not among that minority of child offenders who abduct or assault victims because they have sadistic tendencies or lack the interpersonal skills to gain the confidence and acquiescence of victims (Lanning, 2002). Most online child molesters are patient enough to develop relationships with victims and savvy enough to move those relationships offline (Wolak et al., 2004). They know what to say to teens to gain their trust, arouse their sexual interest, and maintain relationships through face-to-face meetings (Lanning, 2002). Abduction is also rare. None of the victims in the N-JOV Study were abducted in the sense of being forced to accompany offenders (Wolak et al., 2004). However, about one quarter of the cases started with missing persons reports because victims ran away to be with offenders or lied to parents about their whereabouts. So, in many cases, abduction may have been feared.

This is not to say that online child molesters are never violent or never abduct. In the N-JOV Study, 5% used threats or violence, mostly forcible or attempted rape (Wolak et al., 2004). In at least one highly publicized Internet-initiated case, a 13-year-old girl was murdered (CBS News, 2002). Abductions have occurred as well but are very unusual. Overall, what we know about online child molesters suggests that they are not generally impulsive, aggressive, or violent. One possible explanation is that Internet use in the early 2000s was concentrated among those with technical skills, higher educations, and higher incomes, statuses hard to attain by those with impulsive and violent inclinations. This pattern may be changing as Internet access and skills become more widely disseminated. On the other hand, the Internet may never be conducive to antisocial offender styles involving impulse and intimidation, because initial interactions are remote, physical contact is not certain, and intimidation may be difficult to project. Nonetheless, video Web cameras and other technologies that introduce sight and sound into online communications are becoming more sophisticated. It remains to be seen whether they could make the Internet a more attractive venue for antisocial offenders.

***The offenders in undercover "sting" operations are somewhat different from those arrested for victimizing actual youths.*** In the year covered by the N-JOV Study, more online molesters were arrested for soliciting undercover investigators posing online as adolescents than were arrested for soliciting actual youths (Wolak et al., 2003a). These offenders also appeared to be different from other online molesters to some extent (Mitchell, Wolak, & Finkelhor, 2005). Those who solicited undercover investigators were somewhat older and more middle class in income and employment compared with those who solicited actual youths. They were also somewhat less likely to have prior arrests for sexual offenses against minors or for nonsexual offenses or to have histories of violence or deviant sexual behavior. However, both groups had equally high rates of child pornography possession (about 40%) and rates of substance abuse (about 15%). Moreover, one in eight offenders arrested in undercover operations had also committed crimes against actual youth victims, which were discovered as a result of the undercover operation. It may be that the offenders most likely to be fooled by undercover investigators lack suspicion about law enforcement because they have less criminal experience and higher social status. It could also be that some such individuals are less experienced or skilled and more naive in their pursuit of youths and are thus more easily caught.

***Child pornography and exhibitionism are factors in Internet-initiated sex crimes.*** Child pornography (i.e., sexually explicit images of children younger than 18) may play a role in Internet-initiated sex crimes that is different from the role it has played in offline sexual offending (Carnes, 2003; Jenkins, 2001; Taylor &

Quayle, 2003). In the N-JOV Study, 39% of online child molesters possessed child pornography (Wolak, Finkelhor, & Mitchell, 2005a), a felony under federal law and in most states. Whereas child pornography is not a new phenomenon, the advent of the Internet has changed its nature as a crime problem. Child pornography possession, which used to be seen as a low-incidence crime committed almost exclusively by those with an enduring sexual interest in children (Lanning & Burgess, 1984), has evolved into a more general crime problem with an increasingly diverse array of offenders who can access and circulate images easily and privately from home computers (Wolak et al., 2005a). The small amount of research about the motivations of child pornography possessors suggests that, among other purposes, it is used to fuel sexual fantasy, enhance masturbation, and groom and seduce victims (Jenkins, 2001; Taylor & Quayle, 2003), and sometimes it is accessed out of curiosity or for its shock value.

Child pornography *production* is also an aspect of Internet-initiated sex crimes. One in five online child molesters in the N-JOV Study took sexually suggestive or explicit photographs of victims or convinced victims to take such photographs of themselves or friends (Wolak, Finkelhor, & Mitchell, 2005b). In the YISS-2, 4% of youth Internet users were asked to take sexual pictures of themselves and send them to online solicitors (Mitchell, Finkelhor, & Wolak, 2007a; Wolak et al., 2006). Many of these requests appeared to constitute production of child pornography under federal statutes. In addition, if youths comply with such requests, solicitors and others can circulate the images widely online with no possibility that circulation can be curtailed. This is a situation some youths might not have the foresight to understand or appreciate.

The Internet also may be particularly attractive to offenders with exhibitionistic tendencies, who can use Web cameras to transmit images of themselves online. In the N-JOV Study, 18% of online child molesters sent photos of themselves in sexual poses to victims (Wolak et al., 2004). In the YISS-2, 6% of youths who were sexually solicited received such pictures from solicitors (Wolak et al., 2006).

Several technological developments could facilitate continuing increases in child pornography possession, distribution, and production, as well as the use of the Internet by exhibitionists. In the future, all three of these problems may be exacerbated by the growing capacity of computers and removable media to store images; wireless technologies that create mobile access to the Internet via portable devices; widespread access to digital photography, including cell phones and other handheld devices that take and transmit photos; and the increasing use of video Web cameras in chatrooms and during one-on-one communications such as through instant messages.

## Has the Internet Increased Sexual Offending?

Concern about the Internet has fostered speculation that it may increase the number of "hands on" sex offenders and the number of youths victimized, above and beyond the growth in offenses related to possession of child pornography. Although there are plausible mechanisms by which this could happen, they remain speculations as yet unsupported by research findings.

***Does viewing child pornography and participating in Internet sex sites trigger sex offending that would not have otherwise occurred?*** Some researchers who have treated online child molesters have suggested several Internet mechanisms that may promote offending. One is the way the Internet facilitates exposure to child pornography, which some believe may evoke or promote criminal sexual interests that were deeply buried or nonexistent prior to such exposure (Carnes, 2003; Russell & Purcell, 2006). Another is the existence of and easy access to Internet groups that explicitly or implicitly endorse the legitimacy of sexual interests in underage youths. In theory, such endorsements could encourage potential offenders to act on sexual urges that they have previously resisted (Galbreath, Berlin, & Sawyer, 2002; Quayle & Taylor, 2001). Some have argued that Web sites where offenders trade child pornography motivate some to molest and to produce new images for trade and for gaining status among offenders (Taylor & Quayle, 2003). Another possible catalyst to sexual offending may be the anonymity that the Internet appears to afford offenders, who can groom and seduce victims from their homes under the assumption that they will not be observed. This anonymity, combined with the high degree of arousal that results from online sexual stimulation, could lower internal restraints that would normally inhibit acting on inappropriate sexual urges, or it could trigger impulsive behavior (Carnes, 2003; Cooper, Delmonico, Griffin-Shelley, & Mathy, 2004; Galbreath et al., 2002; Quayle & Taylor, 2003). Chatrooms and other online venues that allow for quick, easy contact with youths (or law enforcement personnel posing as youths) may facilitate acting on such impulses. Some therapists have described cases in which the compulsive accessing of Internet pornography and other sexually oriented sites was used to relieve stress or depression (Carnes, 2001; Cooper et al., 2004). This sexually compulsive Internet use may be characterized by rapid escalations in the amount of time spent at online sexual activities and the expansion of sexual interests into areas individuals never previously had, including the seduction of minors.

These are plausible hypotheses, but it is not clear how applicable or generalized these mechanisms may be. Evidence in support of these mechanisms might include findings that Internet offenders have less prior sexual offending and deviance and more child pornography exposure than other child molesters. However, we know of no such evidence at the current time. Furthermore, possible contrary hypotheses also need to be entertained. For example, among some groups of predisposed individuals, easy access to a wide variety of engrossing and high-quality child pornography could serve as a substitute for involvement with actual victims. A similar hypothesis was raised about pornography (but not specifically child pornography) prior

to the advent of the Internet, but little evidence has been accumulated in its support (Kuchinsky & Snare, 1999).

**Does the Internet make youths more accessible to child molesters?** The Internet may facilitate child molesting by making youths more accessible to offenders and creating opportunities for molesters to be alone with victims. It is possible that offenders can find youths more easily online than through conventional social networks. Online communications such as e-mail or instant messages allow frequent, swift, and private exchanges, which online molesters can use to develop relationships with and seduce victims outside of public view and parental supervision. Moreover, youths may be more willing to talk extensively and about more intimate matters with adults online than in face-to-face environments. Disconcerting status differences such as age and social background that may pose barriers to comfortable face-to-face communications between adolescents and adults could be less of an obstacle online. The isolation of online interaction may engender feelings in both molesters and youthful victims that they are outside of inhibiting social constraints imposed by peers, parents, teachers, and others in their face-to-face social networks (McKenna et al., 2002). Feelings of intimacy may develop more quickly, and parties to online interactions may feel freer to broach sensitive or forbidden topics, such as sex. Again, although such speculations are plausible, they need supporting evidence before they can be considered valid assertions. For example, research might try to find out if youths victimized in Internet-initiated crimes are younger or have fewer or different risk factors than youths victimized by similar crimes in offline environments.

**Could the Internet have features that protect youths from victimization?** It is important not to exclude consideration of Internet features that might mitigate, as well as increase, youth vulnerability. One possible protective feature of the Internet is that time is required to move relationships from communication to physical contact. This allows for a period of reflection that may inhibit some dangerous or criminal acts that might occur in offline environments. Another possible protective feature of the Internet is that it may be harder for adults online to project intimidation, authority, or other manipulative tactics that rely on physical presence and status differences. This may reduce the likelihood that adults can pressure young people into sexual activities online, in comparison to offline environments. A third possibly protective feature is that Internet availability may have prompted adolescents to spend more time at home than they once did, because they can engage in a certain amount of adventure and risk-taking from a home-based computer. This may have reduced their exposure to sexual victimization in other, more risky environments, which they may have formerly frequented (Subrahmanyam, Greenfield, & Tynes, 2004). In addition, as Internet technology develops, some of the risk elements inherent in its use may decline. The introduction of video technology during online communications may inhibit some offenders, for example, those who deceive victims about their ages or physical appearances. Also, some youths may be less vulnerable to online sexual advances if they have real-time visual images of offenders.

**Sex crimes against youths have not increased.** An important fact that supports caution in speculating about how the Internet has facilitated child molestation is that several sex crime and abuse indicators have shown marked declines during the same period that Internet use has been expanding. From 1990 to 2005, the number of sex abuse cases substantiated by child protective authorities declined 51%, along with other related indicators (Finkelhor, in press; Finkelhor & Jones, 2006). For example, the rate of sexual assaults reported by teenagers to the National Crime Victimization Survey declined by 52% between 1993 and 2005. A statewide survey of students in Minnesota also showed declines in sexual abuse during this period. Other indicators that might reflect on sexual victimization have also improved. The rate of pregnancy among teenagers has declined; there have been fewer delinquency arrests and fewer children running away from home (Finkelhor & Jones, 2006). To claim, as one headline from Newsweek did, that the Internet has fostered a "shocking increase in the sexual exploitation of children," (Nordland & Bartholet, 2001, cover page), one has to explain why this epidemic has not been more apparent in aggregate indicators of juvenile sexual victimization.

One possibility is that sex offenders have migrated to the Internet from other environments, so that increases in online sex offending have been balanced by decreases in offline victimizations. It is also possible that Internet-initiated sex crimes have increased dramatically but are still relatively few in number compared with offline sex crimes. If so, a serious rise in sex crimes facilitated by the Internet may come in the future as the Internet continues to expand its influence. It may also be that the Internet is only affecting the subgroup of nonforcible sex crimes against adolescents, which are not well measured by most crime indicators because they typically focus on forcible offenses (Troup-Leasure & Snyder, 2005). Or it could be that the Internet factors that hypothetically facilitate sex crimes are not as prevalent or powerful as some believe or are counteracted by other factors that inhibit sex crimes.

Clearly, more research is needed on these issues. Because Internet-initiated sex crimes are a relatively new phenomenon, it may take some time before there is enough information to understand their role and relationship to juvenile sexual victimization overall. In the meantime, it is premature to talk about the Internet as an established facilitator of sex crimes, beyond the possession and distribution of child pornography.

## Implications for Prevention and Public Policy

**Avoid descriptions of the problem that characterize victims as young children or emphasize violence and deception.** A considerable portion of media coverage of Internet dangers emphasizes young children as potential victims or focuses on violence,

abduction, and deception. It may be more compelling in sex crime advocacy and prevention to typify victims as "innocent young children" (Best, 1990), but this will not promote effective public policy or preventive behaviors among those most at risk. Portraying victims as preadolescents does not sensitize the public, parents, or adolescents to the nature of Internet-initiated sex crimes. Similarly, characterizing Internet-initiated sex crimes as violent makes it hard for the public and professionals to recognize nonforcible crimes such as statutory rape, and it may prevent victims from reporting crimes that do not conform to violent stereotypes. Further, it may lead practitioners to mistakenly assume force or deceit on the part of offenders, which can make victims reluctant to fully disclose what happened and which can, in turn, compromise investigations and prosecutions. It also may complicate the treatment of victims who cannot apply the violent stereotype to their situations. Although it would be a mistake to say that these crimes never involve violence or deception, the public already may be so aware of those possibilities that it is essential to provide countervailing information.

**Be clear about why sex with underage adolescents is wrong.** Especially in a society where images of adolescent sexuality abound in the media, it may not be clear to many adolescents and adults that relationships between adults and underage adolescents are criminal. It is valuable for the public to hear messages that reinforce norms and counteract media that present sexualized images of youths. These can include media stories that highlight the prosecution of statutory sex crimes, publicity about age-of-consent laws, and statements from authorities and opinion leaders about the rationale behind these prohibitions. Important points to touch upon include the inequality of power and experience between youths and adults, the immaturity of teens and their lack of readiness for intimate relationships with adults, and the potential negative impact on victims in terms of healthy sexual development and other consequences. Offenders and potential offenders need to hear a clear message that nonforcible sex with underage adolescents violates the social responsibility adults have toward youths for objective mentoring and custodianship.

**Focus prevention efforts more on adolescents and less on parents.** Because parents are a receptive audience concerned about Internet safety, there is a strong inclination to direct prevention strategies toward them. But simply urging parents and guardians to control, watch, or educate their children may not be effective in many situations. The adolescents who tend to be the victims of Internet-initiated sex crimes may not themselves be very receptive to the advice and supervision of parents. Moreover, some of the most vulnerable youths may be alienated from their parents, victims of familial abuse, or dealing with sensitive issues such as inner conflicts about sexual orientation that they feel their parents will not understand. Prevention strategies should be targeted more directly at adolescents themselves, using media and authorities, including other youths, that have their confidence.

As recent research on sexual assault has shown, another important audience for these messages may be peers and other "bystanders" (Banyard, Plante, & Moynihan, 2004). For example, peers who know about the romantic involvements of their friends may heed messages to take preventive measures when they see friends drawn into dubious online relationships. Participants in Internet networks and chatrooms are also bystanders who can take steps to report inappropriate behavior and enforce responsible standards.

**Focus prevention frankly on concerns relevant to adolescents, including autonomy, romance, and sex.** Prevention approaches need to acknowledge the independence and developmental interests of adolescents and the fact that normal adolescent sexual feelings, urges, and curiosity are important factors in these cases. Too often, approaches to prevention shy away from realistic discussions about ordinary sexual feelings. Instead they advise, "Tell a parent, teacher, or trusted adult if you feel uncomfortable about anything you see on the Internet" (Internet Keep Safe Coalition, 2007). Such characterizations gloss over the reality of adolescent sexual development. We recommend educating youths frankly about the dynamics of Internet-initiated and other nonforcible sex crimes. Youths need candid, direct discussions about seduction and how some adults deliberately evoke and then exploit the compelling feelings that sexual arousal can induce. Even young adolescents should be given basic information about the inappropriateness of romantic advances from adults. This information should include reassurances that it is normal to have strong sexual feelings but wrong for adults to provoke or exploit these feelings, especially with youths who are inexperienced in coping with sexual desire and intimate relationships.

**Prevention should be developmentally appropriate and an aspect of broader programs that focus on healthy sexual development and avoiding victimization.** Ideally, prevention information about Internet-initiated sex crimes should be part of broader programs that teach youths about healthy sexual development, including how to recognize and avoid sexual victimization. Such programs should start in early adolescence and be developmentally geared. With younger adolescents, programs might emphasize types of Internet use and Web sites, risky situations youths may encounter online, and the practicing of refusal and resistance techniques. Older adolescents could use information about age-of-consent laws, the problems of relationships with older partners, the dangers of transmitting sexual pictures, and online grooming tactics used by sexual offenders. All such prevention messages need to be developed and tested in conjunction with youths themselves, especially because few if any programs of this sort currently exist and wide gaps may be present between how adults and young people view and understand the online environment.

**Focus prevention more on interactive aspects of Internet use and less on posting personal information.** There is no empirical evidence that posting personal information, by itself and independent of engagement in a pattern of online risky behavior, puts

youths at risk for sexual victimization. Further, millions of youths use social networking sites safely, and we have not found evidence that these sites are more risky than other online venues popular with youths. Rather than focusing on types of online sites or noninteractive pursuits such as posting information, prevention messages should focus on online interactions because Internet-initiated sex crimes come about through direct communications between offenders and victims. This includes educating youths about the specific kinds of Internet interactions that are most associated with victimization, such as talking online about sex to unknown people. At the same time, judicious online contact with unknown people is not harmful or dangerous (Wolak, Mitchell, & Finkelhor, 2002; Wolak et al., in press). Overly broad admonishments about talking to strangers may be seen as unrealistic and undercut credibility. Instead, we should encourage youths to be wary about talking online with unknown people about sex and to report inappropriate sexual overtures to Web site and law enforcement authorities.

**Educate youths about criminal behavior and child pornography.** We also recommend giving adolescents specific, age-appropriate information about the potentially criminal nature of many aggressive sexual solicitations. An adult using the Internet to make sexual advances to minors is committing a crime in most U.S. jurisdictions. Prevention messages also need to publicize the prevalence and risks of adults asking youths to take sexually explicit pictures of themselves. We need to extend this education to parents and clinicians as well, so they understand the unsuspected and risky uses Web and digital cameras may be put to and the potential magnitude of this problem. Clinicians who work with youths who have been sexually abused and assaulted should be alert to the possibilities that illegal sexual images of victims may have been produced. Such images could be available on the Internet, and their possible widespread distribution poses ethical and therapeutic issues that extend beyond those considered in the typical sexual assault response and treatment paradigm (Holland, 2005; Palmer, 2005).

**Develop targeted prevention approaches for the most at-risk youth populations.** Research suggests that youths with histories of offline physical or sexual victimization are more likely to be victimized online. Youths who are alienated from and in conflict with their parents may also be vulnerable, as well as those who suffer from depression, have delinquent tendencies, or struggle with social interaction problems. Boys who are gay or questioning their sexual orientations are another group that may be at high risk, as well as youths engaged in sexual risk taking. Unfortunately, most current prevention programs are developed for the general population of youth Internet users, but the most at-risk youths may be hard to reach with these generic materials. Because mental health professionals may have more opportunities for interaction with at-risk youths, we suggest that mental health organizations, with youths' input, work to develop prevention materials that can be used by practitioners with such populations, individually or in small groups.

**Assess for a pattern of risky online behavior.** Our research has found that although many individual Internet behaviors are not associated with higher rates of receiving aggressive sexual solicitations, there is increased risk associated with engaging in a pattern of online risk taking. The more risk behaviors a youth engages in, the higher the risk. The nine items listed below in order of prevalence (Ybarra et al., 2007) suggest behaviors that may indicate a risk-prone pattern of Internet use. There are certainly others not identified here. However, this list covers the more common and recognizable risk behaviors, and these were the items which, when aggregated, were associated with higher risk in our research (Ybarra et al., 2007). This is not a developed and tested instrument, but the list can be used to quickly identify vulnerable youths who are engaging in an excess of risky Internet behavior. The least prevalent behaviors may pose the most concern.

- Posting personal information online, 56% of youth Internet users
- Interacting online with unknown people, 43%
- Having unknown people on a buddy list, 35%
- Using the Internet to make rude and nasty comments to others, 28%
- Sending personal information to unknown people met online, 26%
- Downloading images from file-sharing programs, 15%
- Visiting X-rated sites on purpose, 13%
- Using the Internet to embarrass or harass people youths are mad at, 9%
- Talking online to unknown people about sex, 5%

Of youth Internet users ages 10 to 17, 15% were high-risk interactors who communicated online with unknown people and engaged in at least four of the other behaviors on the above list (Wolak et al., in press).

## Treatment Issues

### Treating Victims

There is little information about specific treatment strategies for victims of statutory rape or Internet-initiated sex crimes. For youths who do not experience offenses as traumatic and do not have histories of sexual abuse or maltreatment, standard treatment models for sexual abuse such as trauma-focused cognitive–behavioral therapy may not be applicable, at least without major modification. Some youthful victims may feel love and allegiance toward offenders and, at the same time, victimized by authorities and parents, whom they may blame for any stigma or embarrassment they experience. Some victims may be in crisis about sexual orientation issues. Some may not wish to cooperate with law enforcement personnel or mental health providers. The trauma of some may be compounded by an awareness that sexual pictures of themselves are circulating online. Mental health practitioners need protocols for assessing the needs of these youths, who are likely quite diverse. Practitioners also need strategies for building alliances that will encourage victims to accept assistance

when they need it. Developmental issues are also a consideration. Older adolescents may be more capable of understanding the intricacies of relationships than are youths in the early stages of sexual development (Ponton & Judice, 2004). Older youths may be more able to grasp the actual risks of a situation and to articulate the problems that led them into it. Practitioners may find it harder to get through to younger adolescents, who may, in general, experience more negative consequences than older teens.

One approach that has been used with adolescent victims in these situations is to conceptualize treatment in terms of the stages of change model that has been used with drug addiction and victims of domestic violence (Burman, 2003; Prochaska & Prochaska, 2002). This approach requires assessing where youths are along a continuum of readiness to change and what elements of their situations they regard as problematic, taking a motivational enhancement approach (e.g., being nonjudgmental, identifying what would make a behavior a problem requiring change, weighing pros and cons), and then seeing if there are specific concerns to which a component of cognitive–behavioral therapy or skill teaching might apply (L. Berliner, personal communication, July 17, 2007).

In addition, forms of family intervention—focusing on family conflict, parent–child relationships, supervision—that have proven effective with delinquent youths may be useful with some parts of this population (Alexander et al., 1998; Henggeler, Mihalic, Rone, Thomas, & Timmons-Mitchell, 1998). Connecting youths with positive sources of mentoring and education around sexual and relationship issues may also be helpful. Some practitioners may also have important roles in gathering forensic evidence from victims and obtaining their cooperation with law enforcement. Such practitioners need to develop skills for building rapport with adolescents and explaining the function of law enforcement in protecting other youths (Finnegan, 2006).

### Treating Offenders

Somewhat more literature exists about treatment approaches with Internet sex offenders, which has grown out of experience in treating a variety of Internet-related behavioral problems (Carnes, 2003; Cooper, 2002; Quayle, Erooga, Wright, Taylor, & Harbison, 2005; Quayle, Vaughan, & Taylor, 2006). As with all sex offenders, a key challenge is to recognize their diversity and make assessments that allow for treatment and social control options corresponding to the needs and problems of the offenders while protecting potential victims. There are likely to be individuals with serious sexual deviations, sex crime, and general crime histories in this population, as well as those with few mental health problems and no criminal history (Galbreath et al., 2002). Efficacy in general sex offender populations has been demonstrated for a variety of child sexual abuser treatment programs based on cognitive–behavioral and relapse prevention approaches. These programs target such problems as using sex to regulate emotional states, rationalizations and minimizations about victims, and social skill deficits that inhibit consensual relationships with peers (Yates, 2005). Much of this is likely to be applicable to online offenders. If anything, the higher social functioning that may be required for recruiting and grooming victims via the Internet may make therapeutic approaches more successful with Internet offenders than with the general sex offender population.

### Research Needs

Very little is currently available in the way of research on which to base policy and practice in this field. Research takes on a particular value here because the online world changes quickly, and much of its activity is obscured from outside observation. We suggest research be undertaken in four key directions.

One research direction should be organized to monitor the nature and dynamics of online sexual behavior involving youths. Media accounts sometimes alert the public and professionals to developing problems—such as juveniles solicited to produce online child pornography (Eichenwald, 2005)—but the online environment changes so quickly that formal methods of monitoring the extent and dynamics of new developments are badly needed. For example, what will be the impact of new technologies, especially cell phones and other wireless handheld devices, on the dynamics and incidence of Internet-initiated sex crimes? Research strategies should include ongoing surveys of nationally representative samples of youths and focus groups with young people about Internet activities. Online techniques may prove particularly appropriate for recruiting and surveying youths for such studies (e.g., Ybarra et al., in press). The research population should include the full range of children and youths who use the Internet independently. Longitudinal studies that capture developmentally based changes in Internet use are also needed.

Another research direction should focus on learning more about the development of Internet sex-offending behavior. It will be useful to know if there are distinct new groups of offenders in this population and whether the Internet has introduced new pathways into offending behavior. Such studies may be helpful in developing strategies for preventing and short-circuiting Internet offending. Given the increasing law enforcement activity in this arena, researchers may be able to recruit pools of online offenders from prisons and treatment programs. Soliciting practitioners who treat offenders to enter data into centralized data bases is a possible quantitative method that could allow for comparisons between off- and online offenders. Semistructured interviews and similar qualitative methods would also provide helpful insights. In addition, general population studies using both qualitative and quantitative methods that look at online sexual behavior would provide needed information about the online sexual compulsivity that appears to play a role in at least some Internet offending.

The third research direction should center on learning more about victims and potential victims. It will be useful to know about their characteristics, prior experiences, and attitudes. How do potential victims view the Internet and the norms and standards they see as applying to themselves and other people in Internet interactions? Whom might they

view as authoritative sources of information and advice about Internet activity? What needs do they have in the aftermath of disclosure and investigation? Research has already suggested some of the risk-taking activities that may characterize potential victims (Ybarra et al., 2007). Surveys and focus groups with such risk-taking youths may provide insight into their behavior and suggest prevention approaches. Such research requires sensitivity. Recruiting and surveying victims through victim advocacy programs and children's advocacy centers is one possible approach.

Finally, program and policy evaluation research should be undertaken. What are the impacts of different types of prevention messages and strategies? Are youths taking prevention messages to heart? Are they being implemented? Do specific technological strategies make any difference? A wide range of Internet safety programs are being developed and disseminated, most with little evaluation. Experimental designs, with youths randomly assigned to programs, and outcome-based evaluations could easily be implemented to assess the value of such programs, which are often administered in schools and organized youth groups. Because online research techniques have greatly reduced the time and costs involved in such studies, there is little excuse for programs not to build in and report evaluation results as an integral part of their efforts. This process is crucial to avoid the potentially wasteful dissemination of programs that are not effective.

## Conclusion

The research about Internet-initiated sex crimes indicates that the stereotype of the Internet "predator" who uses trickery and violence to assault children is largely inaccurate (Wolak et al., 2004). Most Internet-initiated sex crimes involve adult men who use the Internet to meet and seduce young adolescents into sexual encounters. Most such offenders are charged with crimes, such as statutory rape, that involve nonforcible sexual activity with victims who are too young to consent to sexual intercourse with adults. Numbers suggest that Internet-initiated sex crimes account for a salient but small proportion of all statutory rape offenses and a relatively low number of the sexual offenses committed against minors overall.

Although online molesters take advantage of developmentally normal adolescent interests in romance and sex, some youths may be particularly at risk. This group includes boys who are gay or questioning their sexual orientations; youths with histories of sexual or physical abuse; and those who frequent chatrooms, talk online to unknown people about sex, or engage in patterns of risky off- or online behavior. Although there is little research about online child molesters, they appear to occupy a restricted range on the spectrum of the sex offender population and include few true pedophiles or violent or sadistic offenders. We need frank, accurate prevention programs for youths, thoughtful treatment for victims, and continued research. As access to interactive Internet technologies broadens with the introduction and spread of wireless and handheld technologies, such as cell phones and personal organizers, youth Internet use could become harder to monitor, and accurate descriptions of and education about risks to youths will become even more important.

## REFERENCES

Abma, J., Martinez, G., Mosher, W., & Dawson, B. (2004). *Teenagers in the United States: Sexual activity, contraceptive use, and childbearing, 2002*. Washington, DC: National Center for Health Statistics.

Alexander, J., Barton, C., Gordon, D., Grotpeter, J., Hansson, K., Harrison, R., et al. (1998). *Blueprints for Violence Prevention Series: Book 3. Functional family therapy*. Boulder: University of Colorado, Institute of Behavioral Science, Center for the Study and Prevention of Violence.

American Psychiatric Association. (2000). *Diagnostic and statistical manual of mental disorders* (4th ed., text rev.). Washington, DC: Author.

Apuzzo, M. (2006, March 2). *Prosecutors: Men used myspace.com to meet underage girls for sex*. Retrieved July 20, 2007, from http://www.boston.com/news/local/connecticut/articles/2006/03/02/prosecutors_men_used_myspacecom_to_meet_underage_girls_for_sex/

Bahney, A. (2006, March 9). Don't talk to invisible strangers. *The New York Times*. Retrieved July 20, 2007, from LexisNexis database.

Banyard, V. L., Plante, E. G., & Moynihan, M. M. (2004). Bystander education: Bringing a broader perspective to sexual violence prevention. *Journal of Community Psychology, 32*, 61–79.

Beebe, T. J., Asche, S. E., Harrison, P. A., & Quinlan, K. B. (2004). Heightened vulnerability and increased risk-taking among adolescent chatroom users: Results from a statewide school survey. *Journal of Adolescent Health, 35*, 116–123.

Berliner, L. (2002). Confronting an uncomfortable reality. *The APSAC Advisor, 14*(2), 2–4.

Berliner, L., & Elliott, D. M. (2002). Sexual abuse of children. In *The APSAC handbook on child maltreatment* (2nd ed., pp. 55–78). Thousand Oaks, CA: Sage.

Best, J. (1990). *Threatened children*. Chicago: University of Chicago Press.

Blustein, C. (2007, May 21). Summer break is cause for extra vigilance online. *Tampa Tribune*. Retrieved July 18, 2007, from LexisNexis database.

Boss, C. (2007, June 30). Jail not a given in sex stings; Most who try to prey on kids do little or no time. *The Columbus Dispatch*. Retrieved July 18, 2007, from LexisNexis database.

Burman, S. (2003). Battered women: Stages of change and other treatment models that instigate and sustain leaving. *Brief Treatment and Crisis Intervention, 3*, 83–98.

Carnes, P. J. (2001). Cybersex, courtship, and escalating arousal: Factors in addictive sexual desire. *Sexual Addiction & Compulsivity, 8*, 45–78.

Carnes, P. J. (2003). The anatomy of arousal: Three Internet portals. *Sexual and Relationship Therapy, 18*, 309–328.

Cauffman, E., & Steinberg, L. (2000). (Im)maturity of judgment in adolescence: Why adolescents may be less culpable than adults. *Behavioral Sciences & the Law, 18*, 741–760.

CBS News. (2002, May 21). *The two faces of a 13-year-old girl*. Retrieved July 20, 2007, from http://www.cbsnews.com/stories/2002/05/31/national/main510739.shtml

Cheit, R. E., & Braslow, L. (2005). Statutory rape: An empirical examination of claims of "overreaction". In N. Dowd, D. G. Singer, & R. F. Wilson (Eds.), *Handbook of children, culture, and violence* (pp. 85–112). Thousand Oaks, CA: Sage.

Colb, S. F. (2004). *The pros and cons of statutory rape laws*. Retrieved July 20, 2007, from the CNN Web site: http://www.cnn.com/2004/LAW/02/13/findlaw.analysis.colb.statutory.rape/index.html

Connolly, J., Craig, W., Goldberg, A., & Pepler, D. (2004). Mixed-gender groups, dating, and romantic relationships in early adolescence. *Journal of Research on Adolescence, 14*, 185–207.

Cooper, A. (Ed.). (2002). *Sex & the Internet: A guidebook for clinicians*. New York: Brunner-Routledge.

Cooper, A., Delmonico, D. L., Griffin-Shelley, E., & Mathy R. M. (2004). Online sexual activity: An examination of potentially problematic behaviors. *Sexual Addiction & Compulsivity, 11*, 129–143.

Crimaldi, L. (2007, May 26). Cops, child advocates offer advice to keep

kids safe from Web of predators. *The Boston Herald*. Retrieved July 18, 2007, from LexisNexis database.

Darroch, J. E., Landry, D. J., & Oslak, S. (1999). Age differences between sexual partners in the United States. *Family Planning Perspectives, 31*, 160–167.

Davis, N. S., & Twombly, J. (2000). *State legislators' handbook for statutory rape issues*. Washington, DC: U.S. Department of Justice, Office of Justice Programs, Office for Victims of Crime.

DeLamater, J., & Friedrich, W. N. (2002). Human sexual development. *Journal of Sex Research, 39*, 10–14.

Donovan, P. (1997, January–February). Can statutory rape laws be effective in preventing adolescent pregnancy? *Family Planning Perspectives, 29*, 30–34; 40.

Dubow, E. F., Lovko, K. R., & Kausch, D. F. (1990). Demographic differences in adolescents' health concerns and perceptions of helping agents. *Journal of Clinical Child Psychology, 19*, 44–54.

Eichenwald, K. (2005, December 19). Through his Webcam, a boy joins a sordid online world. *The New York Times*, p. A1.

Filosa, G. (2007, March 24). Online profiles attracting sexual predators, feds warn; Teen sites being used as victim directories. *The Times-Picayune*. Retrieved July 18, 2007, from LexisNexis database.

Finkelhor, D. (1984). *Child sexual abuse: New theory & research*. New York: Free Press.

Finkelhor, D. (in press). *Child victimization: Violence, crime & abuse in the lives of young people*. New York: Oxford University Press.

Finkelhor, D., & Baron, L. (1986). High-risk children. In D. Finkelhor & Associates, *A sourcebook on child sexual abuse* (pp. 60–88). Beverly Hills, CA: Sage.

Finkelhor, D., & Jones, L. (2006). Why have child maltreatment and child victimization declined? *Journal of Social Issues, 62*, 685–716.

Finkelhor, D., Mitchell, K. J., & Wolak, J. (2000). *Online victimization: A report on the nation's youth* (NCMEC 6-00-020). Alexandria, VA: National Center for Missing & Exploited Children.

Finkelhor, D., Ormrod, R. K., & Turner, H. (2007). Revictimization patterns in a national longitudinal sample of children and youth. *Child Abuse & Neglect, 31*, 479–502.

Finkelhor, D., Ormrod, R. K., Turner, H., & Hamby, S. L. (2005). The victimization of children and youth: A comprehensive national survey. *Child Maltreatment, 10*, 5–25.

Finnegan, M. J. (2006). *Investigative interviews of adolescent victims* (NCJ Publication No. 218604). Washington, DC: U.S. Federal Bureau of Investigation.

Frawley-O'Dea, M. G., & Goldner, V. (2007). *Predatory priests, silenced victims: The sexual abuse crisis and the Catholic church*. New York: Analytic Press.

Galbreath, N. W., Berlin, F. S., & Sawyer, D. (2002). Paraphilias and the Internet. In A. Cooper (Ed.), *Sex & the Internet: A guidebook for clinicians* (pp. 187–205). New York: Brunner-Routledge.

Gintz, S. (2007, March 8). Parents urged to monitor children's Internet usage. *Fosters Daily Democrat*. Retrieved July 20, 2007, from http://www.fosters.com/apps/pbcs.dll/article?AID=/20070308/FOSTERS01/103080242&SearchID=73289145425618

Glosser, A., Gardiner, K., & Fishman, M. (2004). *Statutory rape: A guide to state laws and reporting requirements*. Retrieved July 20, 2007, from the U.S. Department of Health and Human Services Web site: http://opa.osophs.dhhs.gov/titlex/statutory%20rape_state%20laws_lewin.pdf

Greenfield, P. (2004). Developmental considerations for determining appropriate Internet use guidelines for children and adolescents. *Journal of Applied Developmental Psychology, 25*, 751–762.

Greenfield, P., & Yan, Z. (2006). Children, adolescents, and the Internet: A new field of inquiry in developmental psychology. *Developmental Psychology, 42*, 391–394.

Guttmacher Institute. (2006, September). *In brief: Facts on American teens' sexual and reproductive health* (fact sheet). New York: Author.

Halpern, C. T., Kaestle, C. E., & Hallfors, D. D. (2007). Perceived physical maturity, age of romantic partner, and adolescent risk behavior. *Prevention Science, 8*, 1–10.

Hansen, C. (2006, October 6). Prominent men caught in Petaluma sting. Retrieved July 20, 2007, from http://www.msnbc.msn.com/id/15130487/?page=6

Henggeler, S. W., Mihalic, S., Rone, L., Thomas, C., & Timmons-Mitchell, J. (1998). *Blueprints for Violence Prevention Series: Book 6. Multisystematic therapy*. Boulder: University of Colorado, Institute of Behavioral Science, Center for the Study and Prevention of Violence.

Hinduja, S., & Patchin, J. W. (in press). Personal information of adolescents on the Internet: A quantitative content analysis of MySpace. *Journal of Adolescence*.

Hines, D., & Finkelhor, D. (2007). Statutory sex crime relationships between juveniles and adults: A review of social scientific research. *Aggression & Violent Behavior, 12*, 300–314.

Holland, G. (2005). Identifying victims of child abuse images: An analysis of successful identifications. In E. Quayle & M. Taylor (Eds.), *Viewing child pornography on the Internet: Understanding the offence, managing the offender, helping the victims* (pp. 75–90). Dorset, England: Russell House.

Internet Keep Safe Coalition. (2007). *Faux paw: Adventures in the Internet: 3 Internet safety rules* [Computer screen wallpaper]. Retrieved July 20, 2007, from http://ikeepsafe.com/assets/wallpaper/Wallpaper1.jpg

Jenkins, P. (2001). *Beyond tolerance: Child pornography on the Internet*. New York: New York University Press.

Jensen, G. F., & Brownfield, D. (1986). Gender, lifestyles, and victimization: Beyond routine activity. *Violence and Victims, 1*, 85–99.

Kelly, K. (2005, June 13). To protect the innocent. Learning to keep sexual predators at bay. *U.S. News & World Report*. Retrieved July 20, 2007, from http://www.usnews.com/usnews/culture/articles/050613/13children_print.htm

Knight, R. A., Carter, D. L., & Prentky, R. A. (1989). A system for the classification of child molesters: Reliability and application. *Journal of Interpersonal Violence, 4*, 3–23.

Kuchinsky, B., & Snare, A. (Eds.). (1999). *Law, pornography and crime: The Danish experience*. Oslo, Norway: Pax Forlag.

Lanning, K. V. (2001). Child molesters and cyber pedophiles: A behavioral perspective. In R. Hazelwood & A. W. Burgess (Eds.), *Practical aspects of rape investigation: A multidisciplinary approach* (3rd ed., pp. 199–220). Boca Raton, FL: CRC Press.

Lanning, K. V. (2002). Law enforcement perspective on the compliant child victim. *The APSAC Advisor, 14*(2), 4–9.

Lanning, K. V., & Burgess, A. W. (1984, January). Child pornography and sex rings. *FBI Law Enforcement Bulletin, 53*(1), 10.

Lauritsen, J. L., Laub, J. H., & Sampson, R. J. (1992). Conventional and delinquent activities: Implications for the prevention of violent victimization among adolescents. *Violence and Victims, 7*, 91–108.

Leitenberg, H., & Saltzman, H. (2000). A statewide survey of age at first intercourse for adolescent females and age of their male partner: Relation to other risk behaviors and statutory rape implications. *Archives of Sexual Behavior, 29*, 203–215.

Leitenberg, H., & Saltzman, H. (2003). College women who had sexual intercourse when they were underage minors (13–15): Age of their male partners, relation to current adjustment, and statutory rape implications. *Sexual Abuse, 15*, 135–147.

Lenhart, A., & Madden, M. (2007). *Teens, privacy and online social networks: How teens manage their online identities and personal information in the age of MySpace*. Retrieved August 3, 2007, from the Pew Internet & American Life Project Web site: http://www.pewinternet.org/pdfs/PIP_Teens_Privacy_SNS_Report_Final.pdf

Livingstone, S. (2006). Drawing conclusions from new media research: Reflections and puzzles regarding children's experience of the Internet. *The Information Society, 22*, 219–230.

Livingstone, S., Bober, M., & Helsper, E. (2005). *Internet literacy among children and young people: Findings from the UK Children Go Online Project*. London: London School of Economics and Political Science.

Lowery, T. (2007). Online sexual predator contacts local 13-yr-old. *Opelika-Auburn News*. Retrieved August 3, 2007, from http://www.wrbl.com/servlet/Satellite?pagename=WRBL/MGArticle/RBL_BasicArticle&c=MGArticle&cid=1173352081343

Manlove, J., Moore, K. A., Liechty, J., Ikramullah, E., & Cottingham, S. (2005). *Sex between young teens and older individuals: A demographic portrait*. Washington, DC: Child Trends.

Manolatos, T. (2007, June 20). Hunting down child predators; Social-networking sites make it hard for agencies to keep up. *The San Diego Union-Tribune*. Retrieved July 20, 2007, from LexisNexis database.

Martin, J. I., & D'Augelli, A. R. (2003). How lonely are gay and lesbian youth? *Psychological Reports, 93*, 486.

Mash, E. J., & Wolfe, D. A. (2005). *Abnormal child psychology* (3rd ed.). Pacific Grove, CA: Wadsworth.

McKenna, K. Y. A., Green, A. S., & Gleason, M. E. J. (2002). Relationship formation on the Internet: What's the big attraction? *Journal of Social Issues, 58,* 9–31.

Medina, J. (2007, May 6). States weigh laws to block Web predators. *The New York Times,* p. 29.

Miller, H. L., Miller, C. E., Kenney, L., & Clark, J. W. (1998). Issues in statutory rape law enforcement: The views of district attorneys in Kansas. *Family Planning Perspectives, 30,* 177–182.

Minaya, Z. (2006, March 3). Pedophiles trolling in MySpace raise alarm. *Houston Chronicle.* Retrieved July 20, 2007, from LexisNexis database.

Mitchell, K. J., Finkelhor, D., & Wolak, J. (2001). Risk factors for and impact of online sexual solicitation of youth. *Journal of the American Medical Association, 285,* 3011–3014.

Mitchell, K., Finkelhor, D., & Wolak, J. (2007a). Online requests for sexual pictures from youth: Risk factors and incident characteristics. *Journal of Adolescent Health, 41,* 196–203.

Mitchell, K., Finkelhor, D., & Wolak, J. (2007b). Youth internet users at risk for the most serious online sexual solicitations. *American Journal of Preventive Medicine, 32,* 532–537.

Mitchell, K., Wolak, J., & Finkelhor, D. (2005). Police posing as juveniles online to catch sex offenders: Is it working? *Sexual Abuse: A Journal of Research and Treatment, 17,* 241–267.

Mitchell, K. J., Wolak, J., & Finkelhor, D. (in press). Are blogs putting youth at risk for online sexual solicitation or harassment? *Child Abuse & Neglect.*

Neemann, J., Hubbard, J., & Masten, A. S. (1995). The changing importance of romantic relationship involvement to competence from late childhood to late adolescence. *Development and Psychopathology, 7,* 727–750.

Nordland, R., & Bartholet, J. (2001, March 19). The Web's dark secret. *Newsweek, 137,* 44–51.

Norman-Eady, S., Reinhart, C., & Martino, P. (2003). Statutory rape laws by state. *OLR Research Report.* Retrieved August 3, 2007, from the State of Connecticut General Assembly Web site: http://www.cga.ct.gov/2003/olrdata/jud/rpt/2003-R-0376.htm

Nuñez, J. (2003). Outpatient treatment of the sexually compulsive ephebophile. *Sexual Addiction & Compulsivity, 10,* 23–51.

Palmer, T. (2005). Behind the scenes: Children who are the subjects of abusive images. In E. Quayle & M. Taylor (Eds.), *Viewing child pornography on the Internet: Understanding the offence, managing the offender, helping the victims* (pp. 61–74). Dorset, England: Russell House.

Peter, J., Valkenburg, P. M., & Schouten, A. P. (2005). Developing a model of adolescent friendship formation on the Internet. *CyberPsychology & Behavior, 8,* 423–430.

Ponton, L. E., & Judice, S. (2004). Typical adolescent sexual development. *Child and Adolescent Psychiatric Clinics of North America, 13,* 497.

Prentky, R. A., Janus, E. S., & Seto, M. C. (Eds.). (2003). *Sexually coercive behavior: Understanding and management.* New York: New York Academy of Sciences.

Prochaska, J. M., & Prochaska, J. O. (2002). Transtheoretical model guidelines for families with child abuse and neglect. In A. R. Roberts (Ed.), *Social workers' desk reference* (pp. 379–384). New York: Oxford University Press.

Quayle, E., Erooga, M., Wright, L., Taylor, M., & Harbison, D. (Eds.). (2005). *Only pictures? Therapeutic work with Internet sex offenders.* Dorset, England: Russell House.

Quayle, E., & Taylor, M. (2001). Child seduction and self-representation on the Internet. *CyberPsychology & Behavior, 4,* 597–608.

Quayle, E., & Taylor, M. (2003). Model of problematic Internet use in people with sexual interest in children. *CyberPsychology & Behavior, 6,* 93–106.

Quayle, E., Vaughan, M., & Taylor, M. (2006). Sex offenders, Internet child abuse images and emotional avoidance: The importance of values. *Aggression and Violent Behavior, 11,* 1–11.

Raj, A., Silverman, J. G., & Amaro, H. (2000). The relationship between sexual abuse and sexual risk among high school students: Findings from the 1997 Massachusetts Youth Risk Behavior Survey. *Maternal and Child Health Journal, 4,* 125–134.

Rawe, J. (2006, July 3). How safe is MySpace? *Time.* Retrieved July 20, 2007, from http://www.time.com/time/magazine/article/0,9171,1207808,00.html

Roberts, D. F., Foehr, U. G., & Rideout, V. (2005). *Generation M: Media in the lives of 8–18 year-olds.* Retrieved July 20, 2007, from the Henry J. Kaiser Family Foundation Web site: http://www.kff.org/entmedia/upload/Generation-M-Media-in-the-Lives-of-8–18-Year-olds-Report.pdf

Roeper, R. (2006, April 12). Wide-open MySpace.com filled with teens, danger. *Chicago Sun-Times.* Retrieved July 20, 2007, from LexisNexis database.

Rogosch, F. A., Cicchetti, D., & Aber, J. L. (1995). The role of child maltreatment in early deviations in cognitive and affective processing abilities and later peer relationship problems. *Development and Psychopathology, 7,* 591–609.

Russell, D. E. H., & Purcell, N. J. (2006). Exposure to pornography as a cause of child sexual victimization. In N. Dowd, D. G. Singer, & R. F. Wilson (Eds.), *Handbook of children, culture, and violence* (pp. 59–84). Thousand Oaks, CA: Sage.

Schrobsdorff, S. (2006, January 27). Q&A: How to keep teens safe on MySpace.com. *Newsweek.* Retrieved July 20, 2007, from LexisNexis database.

Shakeshaft, C. (2004). *Educator sexual misconduct: A synthesis of existing literature.* Washington, DC: U.S. Department of Education, Office of the Under Secretary, Policy and Program Studies Service.

Smith, A. (2007). *Teens who create social networking profiles or post photos online are more likely to be contacted online by people they do not know:* Retrieved October 25, 2007, from the Pew Internet & American Life Project Web site: http://www.pewinternet.org/pdfs/PIP_Stranger_Contact_Data_Memo.pdf

Snyder, H. N. (2000). *Sexual assault of young children as reported to law enforcement: Victim, incident, and offender characteristics.* Washington, DC: U.S. Department of Justice.

Steinberg, L., & Morris, A. S. (2001). Adolescent development. *Annual Review of Psychology, 52,* 83.

Subrahmanyam, K., Greenfield, P. M., & Tynes, B. (2004). Constructing sexuality and identity in an online teen chat room. *Journal of Applied Developmental Psychology, 25,* 651–666.

Subrahmanyam, K., Smahel, D., & Greenfield, P. (2006). Connecting developmental constructions to the internet: Identity presentation and sexual exploration in online teen chat rooms. *Developmental Psychology, 42,* 395–406.

Sullivan, M. (2002). Social alienation in gay youth. *Journal of Human Behavior in the Social Environment, 5,* 1–17.

Sun, P., Unger, J. B., Palmer, P. H., Gallager, P., Chou, C-P., Baezconde-Garbanati, L., et al. (2005). Internet accessibility and usage among urban adolescents in Southern California: Implications for Web-based health research. *CyberPsychology & Behavior, 8,* 441–453.

Taylor, M., & Quayle, E. (2003). *Child pornography: An Internet crime.* New York: Brunner-Routledge.

Tharinger, D., & Wells, G. (2000). An attachment perspective on the developmental challenges of gay and lesbian adolescents: The need for continuity of caregiving from family and schools. *School Psychology Review, 29,* 158–172.

Troup-Leasure, K., & Snyder, H. N. (2005, August). Statutory rape known to law enforcement. *Juvenile Justice Bulletin.* Retrieved July 20, 2007, from the National Criminal Justice Reference Service Web site: http://www.ncjrs.gov/pdffiles1/ojjdp/208803.pdf

Wang, R., Bianchi, S. M., & Raley, S. B. (2005). Teenagers' Internet use and family rules: A research note. *Journal of Marriage and the Family, 67,* 1249–1258.

Ward, T., Polaschek, D. L. L., & Beech, A. R. (2005). *Theories of sexual offending.* Chichester, England: Wiley.

Weinstein, E., & Rosenhaft, E. (1991). The development of adolescent sexual intimacy: Implications for counseling. *Adolescence, 26,* 331.

Williams, T., Connolly, J., Pepler, D., & Craig, W. (2005). Peer victimization, social support, and psychosocial adjustment of sexual minority adolescents. *Journal of Youth and Adolescence, 34*(5), 471–482.

Wolak, J., Finkelhor, D., & Mitchell, K. J. (2004). Internet-initiated sex crimes against minors: Implications for prevention based on findings

from a national study. *Journal of Adolescent Health, 35,* 424.e11–424.e20.

Wolak, J., Finkelhor, D., & Mitchell, K. J. (2005a). *Child pornography possessors arrested in Internet-related crimes: Findings from the National Juvenile Online Victimization Study* (NCMEC 06–05–023). Alexandria, VA: National Center for Missing & Exploited Children.

Wolak, J., Finkelhor, D., & Mitchell, K. J. (2005b). The varieties of child pornography production. In M. Taylor & E. Quayle (Eds.), *Viewing child pornography on the Internet: Understanding the offence, managing the offender, helping the victims.* (pp. 31–48). Dorset, England: Russell House.

Wolak, J., Mitchell, K., & Finkelhor, D. (2002). Close online relationships in a national sample of adolescents. *Adolescence, 37,* 441–455.

Wolak, J., Mitchell, K., & Finkelhor, D. (2003a). *Internet sex crimes against minors: The response of law enforcement* (NCMEC 10–03–022). Alexandria, VA: National Center for Missing & Exploited Children.

Wolak, J., Mitchell, K., & Finkelhor, D. (2003b). *National Juvenile Online Victimization Study (N-JOV): Methodology report.* Retrieved October 26, 2007, from the Crimes against Children Research Center Web site: http://www.unh.edu/ccrc/pdf/jvq/CV72.pdf

Wolak, J., Mitchell, K., & Finkelhor, D. (2006). *Online victimization: 5 years later* (NCMEC 07–06–025). Alexandria, VA: National Center for Missing & Exploited Children.

Wolak, J., Mitchell, K., & Finkelhor, D. (in press). Is talking online to unknown people always risky? Distinguishing online interaction styles in a national sample of youth internet users. *CyberPsychology & Behavior.*

Wolfe, D. A., Jaffe, P. G., & Crooks, C. V. (2006). *Adolescent risk behaviors: Why teens experiment and strategies to keep them safe.* New Haven, CT: Yale University Press.

Yan, Z. (2006). What influences children's and adolescents' understanding of the complexity of the Internet? *Developmental Psychology, 42,* 1–11.

Yates, H. (2005). *A review of evidence-based practice in the assessment and treatment of sex offenders*: Camp Hill, PA: Pennsylvania Department of Corrections, Office of Planning, Research, Statistics and Grants.

Ybarra, M. L., & Mitchell, K. (in press). How risky are social networking sites? A comparison of places online where youth sexual solicitation and harassment occurs. *Pediatrics.*

Ybarra, M. L., Mitchell, K., Finkelhor, D., & Wolak, J. (2007). Internet prevention messages: Are we targeting the right online behaviors? *Archives of Pediatric and Adolescent Medicine, 161,* 138–145.

## ORDER FORM

Start my 2008 subscription to *American Psychologist*
ISSN: 0003-066X

____  $261.00, INDIVIDUAL NONMEMBER  ____
____  $710.00, INSTITUTION  ____
*In DC add 5.75% / In MD add 6% sales tax*  ____
**TOTAL AMOUNT ENCLOSED**  $ ____

**Subscription orders must be prepaid.** (Subscriptions are on a calendar year basis only.) Allow 4-6 weeks for delivery of the first issue. Call for international subscription rates.

**SEND THIS ORDER FORM TO:**
American Psychological Association
Subscriptions
750 First Street, NE
Washington, DC 20002-4242

AMERICAN PSYCHOLOGICAL ASSOCIATION

Or call **800-374-2721**, fax **202-336-5568**.
TDD/TTY **202-336-6123**.
For subscription information, e-mail:
**subscriptions@apa.org**

○ **Check enclosed** (make payable to APA)

**Charge my:**   ○ VISA   ○ MasterCard   ○ American Express

Cardholder Name _____
Card No. _____ Exp. Date _____

_____
Signature (Required for Charge)

**BILLING ADDRESS:**
Street _____
City _____ State ____ Zip ____
Daytime Phone _____
E-mail _____

**MAIL TO:**
Name _____
Address _____
_____
City _____ State ____ Zip ____
APA Member # _____
AMPA08